# CHARLESTON.

## DOLL v. BENDER.

Submitted February 25, 1904—Decided March 22, 1904.

1. ELECTIONS—*Ballots.*

   Two of four columns on a ballot sheet are defaced; the republican column is not defaced; the democratic is defaced by broken lines as to all its offices and candidates except two, and their names are skipped by the lines and thus left on that ballot, but their names are written in the republican column for the same offices for which they stand in the democratic column. The republican ballot only has been voted. The voter has not voted two ballots. (p. 406).

2. ELECTIONS—*Ballots.*

   Though a candidate's name is written in the space above the office on a ballot, it will be held a vote for him for the office below his name where the printed name for that office is erased and that above the written name is not erased. (p. 407).

3. ELECTIONS—*Ballots.*

   The provision in code 1899, chapter 3, section 34, that where a name is substituted for one on a ballot it must be written in the space below the printed name, is directory. Though the name is not there written, the vote will be counted for the written name for the office for which it is plainly intended. (p. 408).

4. BALLOT.

   Distinguishing marks on a ballot will not cause its exclusion from the count. (p. 410).

5. MARKED BALLOT.

   Though lines through the heading of a ballot or through the ballot are not used, still if other marks of cancellation are used, and they plainly indicate that the ballot has not been voted, the ballot is effectually defaced, and can not be counted. (p. 411).

6. MARKED BALLOT.

   Though defacing lines do not pass entirely through a ballot or its heading, yet if it is manifest that the voter did not intend to vote that ballot, the defacement is sufficient. (p. 411).

7. MARKED BALLOT.

    Defacing marks to cancel a ballot must be within the ballot column or its heading. Words only above the heading or elsewhere outside the ballot, such as "I vote this ticket," do not select that ballot and cancel the others. (p. 412).

8. MARKED BALLOT.

    A name is written in the space between two offices, and the printed names of the candidates are not erased. The ballot counts for the office above the written name and for that name, not for the candidate for the office below. It would be otherwise if the printed name of the candidate for the office below were erased. (p. 413).

9. MARKED BALLOT.

    A ballot from which some of the offices and names of candidates for them have been cut entirely out with a knife, instead of being erased with a pen or pencil, is a good ballot for the offices and candidates left in it. The provision of the statute requiring erasure with pen or pencil is directory. (p. 414).

Error to Circuit Court, Berkeley County.

Action by Frank W. Doll against I. L. Bender. Judgment for defendant and plaintiff brings error.

*Affirmed.*

FLICK, WESTENHAVER & NOLL, and FAULKNER, WALKER & WOODS, for plaintiff in error.

FORREST K. BROWN, H. H. EMMERT, and A. G. DAYTON, for defendant in error.

BRANNON, JUDGE:

At the election in Berkley county in November, 1902, Frank W. Doll was the Democratic nominee for the clerkship of the county court and I. L. Bender the Republican nominee. The canvassing board found that Bender had been elected by a majority of four. Doll demanded a recount, and upon it the board found that Doll received 2,135 votes and Bender 2,146, giving Bender a majority of eleven. The contestation was as to 146 ballots, and they were withdrawn from the mass and made a part of the record. Doll carried the case to the circuit court by a writ of *certiorari,* and upon it that court found that Bender had received 2,146 votes and Doll 2,141. From the

judgment of the circuit court declaring Bender elected Doll has sued out a writ of error in this Court.

The ballot sheets have four columns, Democratic, People's Anti-Ring ticket, Prohibition and Republican. We adhere to the law stated in *Morris* v. *Board,* 49. W. Va. 260 and *Daniel* v. *Simms Id.* 554, that the voter must select and use one, and only one, ballot from those on the ballot sheet. We reject those violating this rule. In this connection take a specimen sheet. The people's and prohibition columns or ballots are cancelled by lines. No line in the republican column. Three broken, not continuous, lines cancel all names and offices on the democratic ballot, except for county commissioner and the candidate, Parks, and school superintendent and the candidate, Shirley, the lines skipping these and leaving them untouched. In the republican column, in the space between the place assigned for prosecuting attorney and commissioner, the name of Parks is written and in the space between the place assigned for county clerk and county superintendent the name of Shirley is written. The printed candidates for commissioner and superintendent are erased. This sheet raises several questions. Does it violate the rule that a voter must use only one ballot? If the names of Parks and Shirley had not been written in the republican ballot, and for the same offices for which they stood on the Democratic ballot, it would be a case of two ballots. Though their names yet remained on the democratic ballot, yet they are written for the same offices on the republican. A voter cannot vote twice for the same person at the same election for the same place. By leaving the republican column untouched, we say that one was selected, and seeing the names of Parks and Shirley written in it we see that the voter intended to vote for them, and this is the plainer because he has left them on the democratic ticket; but their presence there is surplusage, performing no office. We see all the balance of that ballot erased. A voter uses two columns where one person is voted for on one ballot, another on another, or where the same person is voted for on one ballot for one office, and on another for an other office. Code 1899 chapter 3, section 34, says that a ballot can be defaced by erasing its party heading, or drawing lines clear through it, "or in any other way indicating that the same has not been voted." Considering that the democratic ballot is erased except as to Parks

and Shirley, that their names are written in the republican ballot for the same offices, and the republican candidates erased, and that the latter ballot is without defacement, we conclude that the intent was to select it and discard the democratic column. The democratic ballot was cancelled.

A graver question arises on this ballot. Can it be counted for Bender? Bender's name is printed for clerk, and in the space below it required by statute to be there for the purpose of allowing the voter to vote for some one other than Bender by erasing his name and writing in the space another name, the voter has written "J. W. Shirley," making it read, "For clerk of the county court, I. L. Bender, J. W. Shirley." As the statute says that when this blank space has a name written in it, and the printed name is not erased, the ballot shall be counted for the written name, it may be said this is a vote, not for Bender for clerk but for Shirley. Inspection of the two ballots tells us that such was not the intent of the voter. He did not intend to vote for Shirley for clerk, because Shirley appears on the democratic ballot as democratic nominee for school superintendent, and the voter let his name stand for that office in the democratic ballot, thus voting for him for that office, and wrote his name in the republican ballot just above the words "For county superintendent of schools," and erased the name of the republican nominee for that office. If he had not left Shirley's name for superintendent in the democratic column, it would not be so plain, but that indicates for what office for Shirley he desired to vote in the republican column. Placing the name of Shirley above the words "For county superintendent" does not change the sense; for the words, "J. W. Shirley for county superintendent" mean the same as "For county superintendent J. W. Shirley." And the fact that he dealt with Parks in the same way confirms this view. He intended to vote for him for county commissioner, and did not intend to vote for prosecuting attorney, though he put the name of Parks in the space below the name of the candidate of that office, instead of that below that of the candidate on the republican ballot for commissioner. He did not intend to vote for Parks or Shirley for offices for which they were not running. He erased the republican names for those offices, and left the republican candidates for prosecutor and county clerk, showing what offices he desired Parks and

Shirley to fill. But it will be said that this view ignores the Code, chapter 3, section 34, saying that a voter desiring not to vote for any candidate on the ballot "may strike out the name so printed on said ballot and write in the blank space next following the name of the candidate or person for whom he so desires to vote. But if he fails to strike from said ballot the name printed thereon, the name written in said blank shall alone be counted." It is urged that in *Morris* v. *Board,* 49 W. Va. 251, the opinion holds the statute, in general sense, mandatory, and particularly that the law requiring a voter who does not wish to vote for the printed candidate to write another name in the space below the printed name, is mandatory, so that the substituted name must be put in that space, and if it is not, it is no vote. It will be seen that the reference in that case to the space below the printed name was as an argument under the statute to show that one column must be selected and made the sole expression of the voter's will. The question whether, after one column *has* been selected and the others erased, the voter must write the substituted name in that space and nowhhere else was not up in that case. This case does present, in the ballot now in hand, that question. In that case it is definitely stated that there are provisions in this statute that are merely directory. We did not intend to hold that the provision as to putting the name in this space is mandatory. It was not in the mind. We now say that when the voter has used one ballot, we can investigate his intention as to his vote. It was the law, before the enactment of the Australian ballot, that the voter's intent must be sought and observed from his ballot. His ballot might be awkward and irregular, but where his intent is plain, that intent must stand. We cannot think the new system has wholly abrogated this rule. The paper is a ballot still to express intent. We cannot think that we cannot look at intention. Some cases do hold that under this new system, looking at its object to suppress fraud, bribery and other election evils, the voter must strictly follow the statute; that the legislature has told him just how he shall vote, and departure from it loses him his vote; but the better opinion seems to be that generally, where the statute does not expressly, or by plain implication, reject the ballot, it is not to be cast out. Though we cannot let the voter use two ballots, can we not say what he meant by

the one selected? For this position I would first call upon the statute itself in that clause of section 66 reading, "And any ballot, or part of a ballot, from which it is impossible to determine the elector's choice of candidates, shall not be counted as to the candidate or candidates affected thereby." This tells us that we must take this one ballot, scrutinize and find out the voter's intention, and say, if it is at all possible to do so, for whom he intended to vote. This language of the statute is alone a warrant for the position just stated. So is general law. See *Norman* v. *Parker*, 158 Ill. 609; opinion of Judge Ellis, 91 Am. St. R. 229, 64 Kan. 216. See *Dunlevy* v. *County Court*, as to intention of voter, 47 W. Va. 613. "Though a candidate's name is written above the name of the office on the ballot, it will be construed for him where the printed name below name of office is erased." *Kreitz* v. *Behrensmeyer*, 8 Am. St. R. 351. Therefore, the vote was for Shirley for superintendent, the name of the nominee for that office being erased, and it was not a vote for Shirley for clerk, but for Bender.

Another question. Some of the ballots have the names of persons on their backs. One has the words "Good bye" at the foot of a column. Another the figure 4 where a printed name is erased. Another has part of the offices on a ballot cut out with a knife. Section 79 provides: "No voter shall place any mark upon his ballot, nor suffer or permit any other person to do so, by which it may be afterward identified as the ballot voted by him. Whoever shall violate any provision of this section shall be deemed guilty of a felony" and be confined in the penitentiary. Section 76 condemns others for inducing voters to place names or other distinguishing marks on ballots. These names, and perhaps some other marks on these ballots would be distinguishing marks under the statue; but we do not discuss what are distinguishing marks, since we have concluded that they do not make ballots void. These provisions against such marks or ear-marks are among the most important enactments in this statute it is true, being intended to defeat bribery, intimidation and all sorts of corruption in elections by covering the ballot with the veil of entire secrecy. Contracts made against a statute prohibiting an act and imposing a penalty for doing it, are void; things done in contravention of such a statute are void; but a vote is not a contract. Elaborate discussion has been had as to

these marks. It may not be without value to refer to some of the cases. "A ballot so prepared by a voter as to contain distinguishing marks, which, if permitted to be passed, would enable it to be identified, cannot be counted." *Keeley* v. *Adams,* 183 Ill. 193 And in *Parker* v. *Orr,* 158 Ill. 609, it is held that this is so, even if the statute contains no prohibition, so vital is the object of the provison. See *Perkins* v. *Bertrand,* 192 Ill. 58, 61 N. E. 405,. 85 Am St. R. 315 ; *Parker* v. *Hughes,* 64 Kan. 216, 67 Pac. 637.. 91 Am. St. R. 216 ; *Vallier* v. *Brakke,* 7 S. Dak. 343 ; *Tebbe* v. *Smith* 49 Am. St. R. 68 ; Note in *Taylor* v. *Bleakley,* 49 Am. St R 243 ; *Coughlin* v. *McElroy,* 77 Am. St. R. 301 ; *Ruttledge* v. *Crawford,* 13 L. R. A. 761.

Some courts hold that to be a distinguishing mark it must have been made with intent that it be such ; but I venture for myself to say that the statute declares any mark to be such, if it identify the ballot, let the intent be what it may, unless by accident or clumsiness. We hold that such mark does not destroy the ballot, on the principle that a citizen can be disfranchised only by clear expression of legislative intent to do so. The Legislature has not said that this mark shall reject the ballot. It had the particular matter under consideration. It selected its penalty. It made the act a crime, but did not add that the ballot should not be counted. In section 66 we find specified several causes for which ballots shall not be counted, and this affords reason to say that it was not intended to make this mark a ground of rejection. The Legislature has not commanded the courts to reject a ballot for this cause. The statute is the sole chart, guide and authority as to elections. It is fairly to be presumed that if the Legislature intended a distinguishing mark to destroy a ballot, it would have said so while enumerating grounds for rejecting ballots. I think it will appear from cases cited above that the weight of authority is, that if the statute does not expressly reject a ballot for this cause it counts, especially opinions in *Parker* v. *Hughes,* 91 Am. St. R. 216, and 90 *Id.* 73. I will add that the Illinois act rejects all ballots not made out as it directs.

Here is a ballot sheet having the republican column clear, and the three other columns have the party headings untouched, but just below them are large crosses like the letter X, erasing some candidates and leaving many others untouched. These

crosses run down the columns about one-third, leaving two-thirds unerased. It is claimed the republican ballot cannot count, because the voter has voted three ballots.

The Code, section 34, directs the voter to select one ballot on the sheet and then adds that "every other ballot on the same sheet shall be defaced by drawing one or more lines with pen and ink or indelible pencil from the top to the bottom thereof, or across the heading thereof, or in any other way indicating that the same has not been voted." It is true these crosses only cover parts of the ballots, but they are found in three columns or ballots alike, and the fourth is not defaced, "indicating" that the voter intended to destroy three ballots and vote the remaining one.

Whilst he did not run a line from top to bottom or across the party headings, the two modes of defacement specified by the statute, yet we think these crosses come in under the words, "or in any other way indicating that the same has not been voted." They show that the intention was to erase the three columns.

Here is another ballot sheet, the two middle ballots are erased by lines clear through, except they leave the party headings and the place for congressman. The Anti Ring column has no printed name for congressman, the prohibition has. The Republican ballot leaves the heading and congressman, Alston G. Dayton, untouched, and all other places for officers and printed candidates are erased by short straight lines erasing the offices to be filled and printed names of candidates, except that it leaves untouched "For Prosecuting Attorney, Ward B. Lindsay," and "For clerk of the circuit court, L. Dew Gerhardt." The Democratic ballot is not in any way erased. The names of Lindsay and Gerhardt are written in it in spaces below the names of J. M. Woods and Samuel L. Dodd, the Democratic candidates for prosecuting attorney and clerk of the circuit court. We hold that the voter has selected the Democratic ballot and destroyed the others. He has transferred to the democratic ballot the names of Lindsay and Gerhardt, and so they are on both ballots, but the transfer takes them from the republican ballot. Under principles stated above their names on the republican ballot do not make the voter vote two ballots. The voter's intent to vote for them is plainly shown by leaving them on the Republican and transferring them to the Democratic ballot.

But he voted for three congressmen, it will be said. We cannot think he intended to do this. We think he intended to vote for John T. McGraw, Democratic nominee, for that place. The Democratic ballot has no erasures except in such transfer of Lindsay's and Gerhardt's names. This fact induces the Court to say that as the statute allows the voter to destroy a ballot "in any other way indicating that the same has not been voted," the voter designed to efface every ballot but the Democratic.

Here is a sheet on which the voter has not touched the Democratic column, but on the other three has drawn lines half way down, leaving the party headings, erasing the Prohibition congressman, Rev. R. M. Strickler, leaving the Republican candidate Alston G. Dayton, and places and candidates for several offices on the Prohibition and Republican columns. He leaves the name John B. Wilson, the only printed name on the People's ballot for clerk of the circuit court. We think that the voter has indicated sufficiently that he rejected all other ballots but the Democratic, although his erasure lines do not erase some candidates on those rejected ballots.

We reject ballots wanting names of one or both poll clerks, because the names of two poll clerks are a most material earmark to attest the genuineness of a ballot; but why give the reason when section 66 expressly says that such a ballot is void, and shall not be counted? *Kirkpatrick* v. *Deegans,* 53 W. Va. 275.

Here is a ballot sheet which has the Democratic ballot undefaced. In the next there are crosses about the middle. In the Republican ballot a line clear through except that it has the congressman untouched. The party headings are untouched. There are the places and names of numerous candidates untouched in the two middle columns. We conclude that it is a good ballot, because we think the crosses in two columns and the long line nearly through the Republican column indicate with fair certainty that the voter intended to vote the Democratic ballot, because it is untouched by any mark and the others are marred. Whilst we require the voter to use one ballot, we must not be too rigid and captious as to the manner of the defacement of other ballots because the statute says that any marks of defacement, which "indicate" that the voter intended not to vote a ballot will do.

Here is a ballot sheet having a line drawn just under the

letters of the party headings of all the ballots except the Democratic, and a pencil mark over the words "Republican ticket," erasing them. In the People's Anti-Ring column a line from its top down two inches, then crossing the line dividing that column and the prohibition column and entering it and going down to the bottom of the prohibition column. Another line begins at the bottom of the People's Anti-Ring column and runs up it to nearly the line just described. There is but one name on that ticket and it is erased by the line. There are the names of the offices and three printed names left in the prohibition colummn untouched. A line runs from top to bottom of the Republican ballot. The Democratic ballot untouched. It is plain that the Democratic ballot was voted, the others not voted, but cancelled.

Here is a ballot sheet having three lines from the top half way down the ballots. The names of some candidates and their offices left in two of them. The Republican ballot is untouched, except that the name of Dayton for congressman is erased and McGraw's written in the space below, and for commissioner Crozinger's name erased and that of Parks written in the space below. How can we doubt that the voter selected the Republican ticket, amended it, and cancelled all others?

Here is one having crosses and lines erasing two ballots, headings and candidates and offices, from two of the ballots, and eight crosses over the candidates and offices on the Republican ballot, but leaving four offices and candidates on it not defaced. The Democratic ballot has no sign of mark on it. We hold the three other ballots cancelled.

Here is one with lines in three columns from Congressman to bottom, leaving headings and names of three congressman, the other column having no printed name for Congress. In the Democratic column one candidate has been erased and a name put in; but in other respects it is just as printed. We hold that all the ballots but the Democratic were erased.

Here is one having three columns erased. The Democratic column is untouched save that the name of Doll is erased, and just to the right of his name Bender's name is written, his name crossing the line between the columns. Though the name is not in the space below, and one-half of it inside and the other

outside the column, it is a good vote for Bender. The intent to vote for him is plain.

Here is a ballot sheet without the sign of any mark in any of the four columns or their headings. Just above the Republican ticket are the words "I vote this ticket." It is plain the vote was intended for the Republican ticket. But no marks are on the ballots. The statute contemplates marks of erasure, and they inside the columns, or through the headings, whatever the mark may be. These columns are just as printed. Such an indication as this will not do. The words do not necessarily refer to any one ballot, though likely meant to select the Republican. They are a mere memorandum on the same paper, but not a part of the ballot.

Here is a sheet with three columns clearly erased by lines from top to bottom. No lines or marks in the Democratic column. In it Doll's name is erased and Bender's written in the space above, instead of in the space below. So with several other names. The writing of the name above the designation of the office does not destroy the vote for Bender. As he is on the Republican ticket for a certain office, writing it in above that same office in the Democratic and erasing it from the Republican column shows that the intent was to vote for him for that same office. We cannot say that writing Bender in the space above clerk of county court shows that he intended to vote for him for the office above, clerk of circuit court, because Dodd's name is erased for the latter office and Gerhardt, the Republican candidate for that office, written in. Failure to write a substituted name in the proper space is not fatal where intent is plain. We must not use the Australian Ballot to defeat plain intent and the sacred right of suffrage.

A ballot has the name of a Democratic candidate for clerk of circuit court erased, and Bender's written in the space below and Doll's left for clerk of county court. It is a vote for Doll, not only because Bender's name is written in below the clerk of circuit court, but the candidate for that office is erased, and Doll's untouched.

A sheet leaves all headings, has a cross over all of the printed names of candidates for congress, thus erasing them, but A. G. Dayton's name is written under the place for that office in the prohibition ballot. The name of David Deck, Prohibition nom-

inee for county clerk, is erased and Bender's name inserted in the space below. Other names are so inserted in that ballot. We hold that the Prohibition ballot was voted, the others rejected by the cross marks specified above.

Here is a sheet from which the voter, to make sure that he did not vote for four Democratic names, cut them out with a knife. The remainder of the ticket is good. He has used a knife to erase the candidates instead of a pen or pencil. Objection may be made to this as a strong distinguishing mark, but cannot as one of mutilation. The balance of the Democratic ballot is clear. He has cut out only part, not cancelled the whole ballot.

A sheet has the Democratic, People's and Prohibition ballots properly erased. Three lines run from prosecuting attorney inclusive down to the bottom of the Republican ticket, others covering the names of several offices and candidates including the office of clerk and name of Bender, thus erasing them; but the voter having thus erased Bender and Zeiler, the Republican candidate for Superintendent, has written in the space below, over the erasing lines, the names of Doll and Dunn the Democratic and Prohibition candidates for clerk of county court and School Superintendent. Though these pencil erasing lines erase the names of three candidates for other offices, the voter has again erased them with ink. We think this shows intent to vote for Doll and Dunn.

A sheet has all party headings intact. The congressman also. The balance of People's, Prohibition and Republican ballots erased by lines. On the Democratic ballot a line runs from the congressman down, erasing all names, to county-clerk, skiping it, and then resuming and going on to bottom. We think all three ballots, except Democratic, were erased and that the Democratic was voted as to congressman and clerk.

Other specimens of ballots could be given, but these will suffice to illustrate the legal principles ruling the case.

Upon a canvass of the contested ballots we find that Bender received 2,131 and Doll 2,128 votes, and we therefore affirm the judgment of the circuit court which declared Bender elected and affirmed the judgment of the canvassing board.

*Affirmed.*

POFFENBARGER, PRESIDENT, (*concurring*) :

All the controverted ballots in this case were disposed of under the principles laid down in *Daniel* v. *Simms,* 49 W. Va. 554. No difficulty whatever was experienced in reaching an unanimous conclusion as to every one of them. Many ballots, counted by the board of canvassers and the circuit court, were rejected here, and some not counted by said board and probably not counted by the court, were counted here, and in every instance of counting and rejecting the court acted with perfect unanimity. My purpose in writing this opinion is, therefore, not to criticise or dissent from any conclusion involved in the decision. It is merely to elaborate upon, and express in my own language, some of the principles which governed the action of the Court in passing upon the ballots.

There were 146 of them, presenting divers methods of marking and raising numerous questions. Most of them, however, called for the application of the statute requiring defacement of all the ballots on the sheet except the one voted, and the principal questions raised in this connection were what amounts to a defacement and how is the intention of the voter to deface to be ascertained and determined from the marks found on the ballot sheet.

The statute provides that the voter shall deface the ballots not voted "by drawing one or more lines with pen and ink or indelible pencil from the top to the bottom thereof, or across the heading thereof, *or in any other way indicating that the same has not been voted by the voter.*" Under the last clause of the statute as quoted above, it was considered and held that a small cross, a straight line up and down the ballot of any length, a number of small crosses at various places on the ballot, or any other sort of line or lines on the ballot or in the heading thereof, is *prima facie* a defacement of that ballot. In the first instance, then, the ballots alone are examined, and if it is found that there are marks of some kind on all but one of them, the voter is deemed to have sufficiently manifested his intention to deface all the ballots except the one left unmarked. In order to deface a ballot, therefore, it is not necessary in all cases that the line or lines shall be across the heading thereof or so drawn as to cover all the names on the ballot.

But this *prima facie* intention of defacement may be rebutted and overthrown by something else appearing on the sheet. On some of the ballot sheets, the two middle ballots were wholly defaced by lines drawn from the top to the bottom, while the Democratic had a broken line drawn through it leaving one or more names on it undefaced, while on others the Republican ballot was in the same condition. In the absence of anything appearing on the sheet to the contrary, this Democratic ballot would be deemed to have been defaced. But, on turning to the Republican ballot, it is found that the names thereon immediately opposite the undefaced names on the Democratic ballot have been stricken out and all the balance of the Republican ballot left unmarked. This circumstance overthrows the *prima facie* defacement of the Democratic ballot by showing the intent of the voter to vote for part of the candidates on the Republican ticket and part of the candidates on the Democratic ticket, contrary to the mandate of the statute, and there is no defacement of either the Republican or the Democratic ballot. This is illustrated by the ballots found on page 290 of the record, top page, 292, 302, 304, 310, 314, 336, 342, 360, 364, 468, 390, 396, 398, 402, 414, 416, 420 and others.

This principle is further illustrated by another class of ballots, a representative of which is found on page 284 of the record. The Democratic ballot is *prima facie* destroyed by a broken line which omits to mark out two names. The two middle ballots on the sheet are defaced by cross marks through the headings thereof. The two names on the Republican ballot immediately opposite the two undefaced names on the Democratic ballot are crossed out. If nothing further appeared, this ballot would be rejected for the reasons above given, as the *prima facie* defacement of the Democratic ballot is overthrown and rebutted by what appears so far on the Republican ballot. But all this is changed by something further apparent on the Republican ballot. The two undefaced names on the Democratic ballot are written under the two names defaced on the Republican ballot, which shows conclusively the intent of the voter to do all his voting on the Republican ballot. That in the Republican ballot which, without anything further appearing therein, would have negatived the intent to deface the Democratic ballot, manifested by the broken line drawn through it,

is overthrown by the transfer of the names, and the *prima facie* defacement of the Democratic ballot remains unaltered. Further illustrations of this will be found on pages, 159, 195, 213, 251, 255, 306, 312, 320, 344, 358, 388 and 418. A ballot held to be good under this rule is found on page 261. The broken line in the Democratic column left two names untouched, Dodd for circuit clerk and Doll for county clerk. The Republican ballot had the name of Dodd's opponent stricken out and Dodd's transferred. *Prima facie,* the Democratic ballot was defaced, and there was nothing anywhere on the sheet to the contrary except the marking out of Gerhardt's name, and this circumstance which would have destroyed the ballot was itself overthrown by the transfer of Dodd's name. Bender's name not having been stricken out, nothing appeared on the sheet to indicate that the remaining unmarked name on the Democratic ballot was voted.

As between Bender and Doll, the ballot last above described falls under the rule under which the ballot found on page 209 of the record was counted. By a broken line, all the names on the Republican ticket were defaced except that of Bender. The two middle ballots were entirely defaced. The Democratic ballot was free from any mark, except one indicating the vote on the road law. It was held that nothing appeared on the sheet to negative the intent to deface the Republican ballot, manifested by the broken line, and that the entire Democratic ticket had been voted and the Republican ticket defaced. Upon the same principle, the ballots found on pages 141 and 354 were counted.

A peculiar ballot is found on page 322. The Republican, Prohibition and the Anti-Ring ballots are thoroughly defaced by a line drawn from the top to the bottom of each. The Democratic ballot has all the names marked out by a broken line drawn from top to bottom except those of Dodd for circuit clerk and Doll for county clerk. This was rejected by the board of canvassers. It was counted here for Doll, it being held that there is a presumption that the voter intended to vote for somebody and he had not violated the mandate of the statute by attempting to vote for persons on more than one ballot without transferring the names into a single column. He had thoroughly defaced all the ballots except the Democratic ballot. Upon that ballot he had placed marks which, in the absence of

anything to the contrary, would have manifested a sufficient intent to deface it. But this *prima facie* defacement is overthrown and rebutted by leaving two names on it unmarked. The court held the two names to be an undefaced part of the ballot, to be counted under section 66 which impliedly says a part of a ballot shall be counted if it is possible to ascertain from it the elector's choice of candidates. Every other ballot was thoroughly defaced and part of this one left undefaced. It is a part of a ballot and no mandatory provision of the statute is violated by counting it. A similar ballot is found on page 308 where the Republican, Prohibition and Anti-Ring ballots are defaced by a line drawn through each of them from top to bottom, and the Democratic ballot has a line drawn from top to bottom, and and through, the name of the candidate for Prosecuting Attorney, leaving all other names on that ballot unmarked. This ballot also was rejected by the board of canvassers but counted here.

A ballot sheet not counted by the board of canvassers or by this Court is one found on page 382. On each of the ballots a line begins with the senatorial ticket and runs to the bottom, except that the line on the Democratic ticket is broken so as to leave one name at the break unmarked. *Prima facie,* all of the ballots on this sheet are defaced. The congressional candidate on each of them is left unmarked and one additional candidate on the Democratic. There is no more reason to say that the voter intended to vote for a man on any one of these ballots than there is to say he intended to vote for a man on either of the others.

These illustrations are sufficient to indicate the application of the principles upon which questions concerning cancellation of ballots were determined.

The other class of questions in the case relate to the intent of the voter as to candidates whose names appeared upon, or are written by him in, the column or ballot he voted. Whatever may be said of the expression in the opinion in *Morris* v. *Werlz,* 49 W. Va. 251, which is said to have intimated that the statutory provision which says a voter desiring to vote for a person whose name does not appear on the printed ballot selected by him shall erase the name of the person whom he wishes to displace by that of another candidate and write the name of such

other candidate in the blank space below the name erased, is mandatory, it is certainly true, as an examination of the opinion in that case will show, that the point did not arise in the case and nothing called for a decision upon it. It appears in the opinion in the form of a question. It is also true that it was expressly stated in *Daniel* v. *Simms,* 49 W. Va. 554, 574, that "If the voter has placed the names of all persons for whom he offers to vote in one column, and has thus prepared his ballot his vote should be counted, if his intention can be ascertained from that ballot, although he may not have written the names in the exact places in the column designated by the statute." This declares that provision of the statute to be directory and not mandatory. The question did not arise in that case, but it had arisen in *Dunlevy* v. *County Court,* 47 W. Va. 513, and had been there decided in the same way. The statute does not prohibit the counting of the ballot for the person whose name is transferred because of failure to write it in the space prescribed therefor. No provision of the statute has been declared to be mandatory except in those instances in which it was declared by the legislature that the ballot should not be counted in case of failure to comply with the statutory requirement. Section 66 does not say every ballot from which the voter's intention as to candidates can be ascertained shall be counted, but it contains a provision from which it is naturally and reasonably to be inferred that such was the legislative intention. It prohibits the counting of "any ballot, or part of a ballot, from which it is impossible to determine the elector's choice of candidates." The converse of this, namely, that any ballot or part of a ballot from which it is impossible to determine such choice, shall be counted, must be true. If so, the rules of law governing inquiries as to the intent of the voter, except so far as controlled by the statute, must govern in determining from the ballots selected and voted, the persons for whom the elector voted, and, in passing upon the ballots to which names have been transferred, these rules, in so far as they are unchanged by the statute, have been applied.

DENT, JUDGE: (*concurring*):

I concur in the result of this case for the reason that according to the rules and principles of *Dunlevy* v. *County Court,* 47

W. Va. 513, the Republican candidate, J. L. Bender, had a majority over his Democratic opponent, Frank W. Doll, of not less than fourteen. The result of this decision gives the Republican candidate a majority of three.

If the question asked in *Morris* v. *Wertz,* 49 W. Va. 260, to-wit: "Under these authorities I think I may ask whether the plain requirement of our statute that the voter shall select one ballot only, is not mandatory; and whether that provision that he shall place a substitute candidate's name in a particular blank space under the erased name, is not also mandatory?" had been wholly answered in the affirmative, the latter clause relating to the blank space would have caused the rejection of eleven more ballots, eight of which were for Bender and three for Doll, would have changed the result reached and elected Doll by two majority.

Such a holding in my opinion, as givn in *Dunlevy* v. *County Court,* is not justified by the statute and would have been a positive breech of moral law.   I am aware that there are some people who at least profess to believe that elections, being human institutions, are governed solely by human inclinations, and are not subject to the supervision or control of that moral code of ethics promulgated by God through the greatest of all human law-givers, from Sinai's hoary summit.   This, however, is a great and grievous error, for the eighth commandment "Thou shalt not steal," forbids not only larceny as defined in the criminal code, but also the unjust deprivation of every person's civil, religious, political and personal rights of life, liberty, reputation and property even though done under the sanction of legal procedure.

While the tenth commandment, "Thou shalt not covet," rebukes even the desire to do such things.   The selfish disregard of these plain inhibitions of both revealed and natural law, supported by the dictates of a pure conscience, brings on political corruption, poisons the very fountain head of civil authority, the ballot box, and ends in disrespect to all law, followed by lawlessness, fraud, rapine, murder and lynching, by rope, fire and torture.

A broken moral law by whoever done, however done, and wherever done, is certain to bring its retribution which may fall on the head of the innocent and pure, but for which the ag-

gressor must some day, somewhere and somehow, make full restitution. This is a lesson which men are slow to learn and unwilling to receive, although the history of the past is but a record of one-half of its profound truth, while the other half awaits the revelations of eternity.

With my unshaken and fixed belief in the moral law, the supreme rule of Almighty God, the final triumph of perfect righteousness and the sure punishment of all iniquity, I could not do otherwise than concur in sustaining the expressed will of the people, bound as I am by the oath of office under which I hold my commission. A cross and a crown of thorns are for more to be preferred than success achieved through the broken laws of God.

While I concur in the result, I cannot yield assent to the mandatory character of the statute relating to the choice of the voting column, except that when more than one of the ballots have nothing on them to indicate which one of them was not voted, and which was, then neither of them should be counted for the reason that the choice of the voter as to any office, is non-ascertainable.

The present opinion saps the foundation from under such holding and leaves it suspended on the mere dictum of the court. Its continuance in operation can have but one effect alone, and that is it may compel the election officers to sometimes defeat the will of the people by rejecting ballots on which voters have plainly made their intention appear. It accomplished no purpose in this case, except it caused the rejection of thirty-eight ballots with the intention of the voter so plainly written on the face thereof that no one could be deceived thereby. Twenty-three of these ballots were for Bender and fifteen thereof for Doll, making a net loss of eight to Bender. If Bender had lost four more or Doll four less, or Bender two more and Doll two less the result of the election would have been changed.