PRINCE E. ROLLYSON *v.* COUNTY COURT OF SUMMERS COUNTY,
*et al.*

(No. 7498)

Submitted November 26, 1932.   Decided December 6, 1932.

*R. F. Dunlap,* for relator.

*Wm. H. Sawyers* and *P. J. Carr,* for respondent R. R. Keller.

MAXWELL, JUDGE:

This proceeding in mandamus involves a Republican membership of the board of education of the Independent School District of Hinton.

The board consists of four members, of whom, under legislative inhibition in the act creating said independent district, not more than two shall be members of the same political party. Thus, there have been two Republicans and two Democrats on the board. This year, two members were to be elected, of opposite politics. At the primary election held in the month of May, the Democrats nominated one W. W. Jackson for membership on the board. He is not involved in this proceeding. The Republicans nominated R. R. Keller. Though the relator, Prince E. Rollyson, was not nominated for said office by any political party or any organization or in any manner, a large number of voters expressed preference, for Rollyson over Keller by writing Rollyson's name on the ballot, in most instances cancelling the name of Keller, but in some not cancelling it.

There are eight election precincts in the Hinton Independent School District. The election returns as certified by the election officials were canvassed by the principal respondents, the president and commissioners of the county court of Summers county, ex officio the canvassing board of election of the said independent district. The board first ascertained that Rollyson had received 1355 votes and Keller 1337, a majority of 18 for Rollyson. Keller demanded a recount. Upon completion thereof, the board of canvassers found that Keller had received 1344 votes and Rollyson 1218, a majority of 126 for Keller. A certificate of election was issued Keller over the protest of Rollyson.

One hundred and forty-five votes are involved in this proceeding, some coming from each precinct. The original ballots are before us, having been delivered here by their proper custodian, the clerk of the county court of Summers county. Of the number stated, there are 144 which Rollyson contends

should have been counted for him. Presumably none of these were counted for Keller either. The other ballot (No. 1 of ward 8) was counted for Keller on the recount, and Rollyson contends it should not have been counted for either. Keller, of course, maintains the negative of these assertions.

The threshold inquiry presents a question of the right of voters, whether Democrats, Republicans or otherwise, to write the name of Rollyson on the ticket as their preference for Republican membership on the board of education.

The act creating the Hinton Independent School District is chapter 43 of the Acts of the Legislature of 1921. Section 5 of that act, as amended by chapter 100 of the Acts of 1923, reads:

"There shall be elected by the qualified voters of the independent school district of Hinton at an election to be held in the said district on the second Tuesday of December, one thousand nine hundred and twenty-two, four school commissioners, or members of the board of education of said district, two members of the said board of education shall be elected for a term of two years, and two members of said board of education for a term of four years; the two persons of opposite politics receiving the highest number of votes for school commissioner at the said election shall be declared elected for the full term of four years, and the two persons of opposite politics receiving the next highest number of votes for said office at said election shall be declared elected for the short term of two years; and biennially thereafter, at each general election to be held on the first Tuesday after the first Monday of November, in the said independent district, there shall be elected by the qualified voters of the said independent district two school commissioners, or members of the board of education for a full term of four years. The term of office shall commence on the first day of July, next after their election, and they shall hold their said office for a term of four years and until their successors have been elected and qualified.

"*Provided*, that after the first election of the said board of education as herein provided for, not more than one person whose name appears on the ticket of any party being voted for at an election for member of the said board of education, shall be elected to

office. The two candidates of opposite politics receiving the greatest number of votes shall be declared elected, it being the intention of this act to make and keep the said board of education non-partisan, and that no political party at any time, shall have on said board of education more than one-half of the members to be elected thereto.''

Section 7 of the original act (not changed) reads: ''Candidates to be voted for at any election for members of said board of education may be nominated by convention, primary or petition in the manner and under the provisions now or hereafter prescribed by the state laws relating thereto. *Provided, however,* that no political party shall nominate more than the number of members of said board to be elected, and that no candidate shall be nominated who is a resident of the same voting precinct in which either of the holdover members of said board of education resides.''

It is contended on behalf of R. R. Keller, who is also a respondent in this proceeding, that under the statutory provisions quoted, there can be no voting at an election for a member of the school board for any persons other than the nominees of the several political parties (that is, vote for one nominee of each of two parties), and that where there are only two nominees—one by each of the two dominant parties —nomination is tantamount to election. We cannot adopt this view. We are of opinion that it is not consistent with the quoted language that ''not more than one person whose name appears on the ticket of any party being voted for at an election for member of said board of education, shall be elected to said office. The two candidates of opposite politics receiving the greatest number of votes shall be declared elected. * * *.'' Nor is said contention consistent with the language, ''provided, however, that no political party shall nominate more than the number of members of said board to be elected, * * *.'' The necessary inference from the phrase that not more than one person whose name appears on the ticket of any party being voted for at an election for membership on said board shall be elected to said office is that the name of more than one person may appear on the ticket of any party as a candidate of that party for said

board. Again, the provisions, ''The two candidates of opposite politics receiving the greatest number of votes shall be declared elected'', also implies that more than two persons may be voted upon. And, further, the said provision of section 7, that no political party shall nominate more than the number of members of said board to be elected, means, of course, that if there are to be two members of the board elected at a given election, each political party many nominate two candidates. Voters at the election could then support any two of the several candidates of the different parties; the two of opposite politics receiving the highest number of votes would be the successful candidates. So that there is no barrier in the act which limits the field of voting to one regularly nominated candidate of a party. If the two major parties have contented themselves with one nominee each as a candidate for the board, why may not a voter exercise his broad right of writing on the ballot the name of some one else as his choice for said office in preference to one of the party nominees? We are of opinion the law gives him the right to dò so, if the person whose name he inserts is of the same political party as the person for whose name he makes the substitution.

To enable a voter to vote for a person whose name is not printed on the ballot, our statute provides: ''If the voter desires to vote for any person whose name does not appear on the ticket, he can substitute the name by writing it with black lead pencil in the proper place, and making a cross-mark in the blank space at the left of the name so written.'' Code 1931, 3-5-19. Where a name is thus inserted, is it necessary that there be a cross-mark placed in front of the name in order that the vote may be counted? We think not. In our judgment, the requirement that there be a cross-mark in front of a ''written in'' name should be treated as directory merely. The mere fact of the writing of the name of another person indicates the voter's desire to vote for that person. A cross-mark in front of such written name is superfluous and is therefore not essential to the validity of the vote. It is the intention of the writer which must be sought and which will be respected; technical deviations from statutory directions are not destructive of a vote where the voter's intention is

plain. *Hatfield* v. *Board,* 98 W. Va. 41, 126 S. E. 708; *Daniel* v. *Simms,* 49 W. Va. 554, 39 S. E. 690; *Doll* v. *Bender,* 55 W. Va. 404, 47 S. E. 293. Where a name is written in the space between two printed names on a ballot and the printed names are not erased, the ballot is to be counted for the office immediately above the written name and for that name. *Doll* v. *Bender, supra. A fortiori* is this true where the written name appears immediately below the last printed name on a ticket as in this case. "A ballot is to be construed in the same way as any other written or printed document, and the construction must be such as to give effect to the voter's intent if that can be ascertained from the face of the ballot, or, in some cases, as we have seen, from the ballot as explained by evidence *aliunde.* If, therefore, a voter has written upon his ballot the name of a particular person in connection with the title of an office, and omits to strike out the name of another person printed upon it in connection with the same office, the writing must prevail, and the vote must be counted for the person whose name is written. This is upon the ground that the writing is the highest evidence of the voter's intention." McCrary on Elections (4th Ed.), sec. 543.

A few more than a score of electors who voted straight Democratic tickets inserted the relator's name in the Republican ticket. Some placed an X in front of the written name; some did not. For reasons stated, the X was not necessary. Under our above analysis of sections 5 and 7 of the act creating the Hinton Independent School District, we are of opinion that Democratic electors had a right to vote not only for their party nominee (as they did) but also to vote for the Republican nominee or some other Republican in his stead (as they did), or to discard entirely their own nominee and vote for the Republican nominee and "write in" the name of another person for whom they also desired to vote. Twenty-five voters who voted straight Republican tickets inserted relator's name immediately below the name of R. R. Keller. There was a third and much larger group of voters who voted mixed tickets, and they also wrote the relator's name in the space just below the printed name of R. R. Keller for member of board of education. It is our judgment that all of these ballots should be counted for Prince E. Rollyson where there is no

reasonable doubt that he was the person intended to be designated by the voter.

The name of Rollyson as written on the ballots is spelled in many different ways. Where the name as spelled is *idem sonans* with the name Rollyson, we have disregarded the misspelling. Where a voter's intention is reasonably evident, his misspelling of the name of a person for whom he desires to vote should not deprive him of his vote. *Frazier* v. *Board*, 79 W. Va. 425, 92 S. E. 99. There are three instances, however, in which we have not counted for Rollyson ballots which may have been intended for him. They are ballots Nos. 7 and 12 of ward 7, and No. 6 of ward 4. As near as we can determine, in the first, the name written by the voter is ''Roson'', in the second, ''Rolins'', and in the third, ''Robson''. Where, in succeeding sections we refer to the name Rollyson, we do not mean that in each instance it was spelled correctly by the voter.

In the eight precincts there were 28 voters who wrote the name Prince Rollyson or P. E. Rollyson (with variant spelling) immediately below the name of R. R. Keller. Some carry his address, some do not. These ballots involve no question of identity of the person for whom the vote was intended. They must be counted for relator. There were other groups as follows: 71 voters wrote the name Rollyson (variously spelled, omitting christian name or initials) below the name of R. R. Keller; 27 voters wrote below the name of R. R. Keller the name and address, Rollyson, Hinton (variant spelling); two wrote the name and address, ''Rollyson, Bellepoint''; (it appears from the record that Bellepoint is within the Hinton Independent School District.) Should these ballots carrying the name ''Rollyson'', omitting christian name and initials, be counted for relator?

In his petition for mandamus, the relator alleges that his family, consisting of himself, his wife, Edith C. Rollyson, and three minor children, is the only family of the name of Rollyson residing within the territorial bounds of the Hinton Independent School District, and is the only family of that name in Summers county except that there is a Mrs. Shan Rollyson residing near the village of Talcott. With respect to these allegations of the petition, the respondent Keller says in his

174

answer: "Your respondent further says that he is not advised as to the number of persons of the name of Rollyson residing in the said Independent School District of Hinton, and calls for strict proof of the allegation in the petition in connection therewith, * * *. Your respondent denies that there was no other resident within the Independent School District of Hinton by the name of Rollyson, but says to the contrary, that Edith C. Rollyson, aged thirty-six years, resided within said district, * * *."

There is thus no denial that Prince E. Rollyson and Edith C. Rollyson, his wife, are the only two adults of the name of Rollyson residing within the Hinton Independent School District. Therefore, when a voter of that district wrote the name "Rollyson" on his ballot as the person for whom he desired to vote, instead of R. R. Keller, for the office of school commissioner, for which of the said two adult Rollysons did the voter intend to vote? It is a matter of common knowledge that people generally do not refer to women by their surnames without title or other designation, but men are commonly referred to in that manner. There are at least two good reasons why women are not referred to in this manner. First, the spirit of courtesy ordinarily prevents reference to women in such unconventional fashion, and, second, notwithstanding the great deference which in our generation is paid to worthy women, the husband stands at the head of the household. When an individual is referred to by the surname of a family, the man of the house is the individual to whom reference is ordinarily made, and of this matter of general knowledge, courts take judicial notice. In consequence we say that when a voter of the Hinton Independent School District voted for "Rollyson" for membership of the school board, Prince E. Rollyson was the individual for whom the vote was intended. Therefore, the 71 votes, the 27 votes, and the two votes, should all be counted for Rollyson. These are to be added to the 28 first mentioned. Of the 145 questioned ballots before us, we have thus accounted for 131, all of which were denied Rollyson, but whereof 128 must be counted for him. Three are discarded as above stated.

There remain fourteen ballots to be considered. Ballot No. 17 in the first ward was a straight Democratic vote indicated

by a cross-mark in the circle at the top of the Democratic ticket, but the voter had crossed over to the bottom of the Republican ticket and placed a cross-mark in the square before the name of R. R. Keller, and immediately under Keller's name he wrote the name and address "Pirce Rollyes, Hinton W. Va." The voter was entitled to vote for two persons for the board of education. The cross-mark in the square before Keller's name indicated his preference for Keller over the opposing name of W. W. Jackson on the Democratic ticket, and the writing of Rollyson's name indicated a desire to vote for him. The ballot should have been counted for both Keller and Rollyson. Ballot No. 15 in the second ward is exactly the same except for a little variation in the spelling of the name Rollyson. This ballot likewise should have been counted for both Keller and Rollyson. Ballot No. 4, second ward, was a mixed ballot. The name of W. W. Jackson was scratched out on the Democratic ticket, and a cross-mark was made in the box preceding R. R. Keller's name, and in the same space with Keller's name, though to the right side thereof rather than below, was written the name "Rollyson". This ballot also should have been counted for both Keller and Rollyson.

Ballot No. 7 of the eighth ward, also discloses a mixed ticket. There is no cross-mark in the square preceding the name of W. W. Jackson nor is his name scratched out. There is a cross-mark in the square preceding Keller's name, and immediately below Keller's name appears the name and address "Prince Rollyson, Hinton". This ballot should have been counted for both Keller and Rollyson. Ballot No. 6, eighth ward, is exactly like the one preceding as to the board of education vote, except that Rollyson's name is written "P. E. Rollyson", and no address given. This ballot also should have been counted for both Keller and Rollyson.

Clearly, these five votes were not counted for Rollyson. Whether they were counted for Keller we do not know. We shall state that matter alternatively in our recapitulation. The result will not be affected whether these five votes are added to Keller's total or not.

Ballot No. 3, fourth ward, is a straight Democratic ticket, except for sheriff, with the name "Rollyson" written immediately under Jackson's name. This vote should be counted for

both Jackson and Rollyson. Ballot No. 2, fourth ward, is a mixed ticket with no mark in any circle at the top of a ticket. The voter's choice was indicated by cross-marks in squares preceding names of candidates. There is no cross-mark for either W. W. Jackson or R. R. Keller. The name "Prince Rollyson" is written in the space for member board of education at the bottom of the Communist ticket. This ballot should be counted for Rollyson.

Ballot No. 7, ward five, is a mixed ticket, predominately Democratic, with the names of both W. W. Jackson and R. R. Keller scratched out, and the name and address "Mr. Rollison, Hinton, W. Va." written under the name of Jackson. This vote should be counted for Rollyson. Ballot No. 6, fifth ward, is the same, except for variation in the spelling of the name Rollyson. This vote likewise is for Rollyson. Ballot No. 1 of the sixth ward is a straight Democratic vote, indicated by both a mark in the circle at the top and by cross-marks in the squares preceding the names of the Democratic candidates, including W. W. Jackson. Lines are drawn through the full length of each of the other four tickets printed on the ballot. At the bottom of the Republican ticket, there appears the name of Prince Rollyson with a cross-mark in an improvised square in front of his name, but the cancelling lines which pass down the full length of the Republican ticket extend heavily through Rollyson's name. In this uncertainty, the ballot cannot be counted for Rollyson. It stands for Jackson alone. Ballot No. 17 of the seventh ward is a mixed ballot, predominately Republican, with R. R. Keller's name scratched and the name "Rollison" written at the bottom of the Prohibition ticket in the space provided for member board of education. This should be counted for Rollyson. No. 16 of the same ward, is a mixed ballot with Keller's name scratched. a cross-mark in the square preceding Jackson's name, and immediately under Jackson's name is written the name "Rolison". This ballot supports both Jackson and Rollyson. Ballot No. 2 of the eighth ward, has not a mark or scratch on it, except that across the bottom of the Communist, Socialist and Prohibition tickets the voter has attempted to write a name twice. Each effort is strongly suggestive of the name "Rollyson", but because of the illegibility of the writing, this ballot should not be counted.

Ballot No. 1 of ward eight, is a straight Democratic vote, indicated by a cross in the circle at the top of the Democratic ticket. Cancelling lines are drawn completely through each of the other tickets appearing on the ballot, except that the line in the Republican column stops just before the name of R. R. Keller is reached at the bottom. A cross-mark appears in the box preceding Keller's name. This is a vote for both Jackson and Keller. This is the ballot mentioned in the first part of this opinion as having been counted for Keller and challenged by Rollyson. The challenge is not well founded.

It follows, therefore, that of the fourteen ballots last considered, eleven must be counted for Rollyson. Adding this number to the 128, above discussed and declared for Rollyson, we ascertain that of the 145 ballots before us, Rollyson is entitled to 139. The isolated ballot (No. 1 of ward 8) stands as counted for Keller by the canvassing board.

As stated in the third paragraph of this opinion, the board of canvassers, on recount, found that Keller had received 1344 votes and Rollyson 1218 votes. To the number of votes thus accredited to Rollyson by the canvassing board there must be added 139 votes as disclosed by this opinion. That makes his total 1357. Keller's total remains as ascertained by the canvassing board, to-wit, 1344, unless there must be added the five votes in this opinion discussed as properly subject to be accredited to both Keller and Rollyson. If these five are to be added to Keller's vote (a matter which we cannot determine from the record before us) his total will be 1349. In either event, Rollyson has a majority over Keller.

On behalf of the respondent Keller it is urged that it does not satisfactorily appear from the record as to what are the political affiliations of the relator. True, this does not clearly appear from relator's petition in mandamus, but, without objection from respondent Keller, there was filed with the petition in this court an affidavit of the relator setting forth that he is now and for many years has been a Republican. There is no denial of that fact here, nor was there any request to file a counter affidavit covering that matter. The averment of the affidavit must be taken as true.

In the light of all of which we are of opinion to award a writ of mandamus as prayed for by Prince E. Rollyson re-

quiring the county court of Summers county, sitting as a canvassing board, to reconsider its action in awarding a certificate of election to R. R. Keller for the office of member of the school board of Hinton Independent School District, and to award such certificate to Prince E. Rollyson as the Republican receiving the highest number of votes for said office at the election on November 8, 1932.

*Writ awarded.*