# CHARLESTON.

STATE *ex rel.* W. H. WESTFALL *et al v.* R. S. BLAIR, MAYOR, ETC. *et al.*

Submitted January 27, 1921.   Decided January 27, 1921.
Opinion Filed February 1, 1921.

1.  MUNICIPAL CORPORATIONS—*Resignation of Majority of Council to Prevent Filling of Vacancies Held Not to Absolve Them from Official Duties.*

    Resignation of a majority of the common council of a town, chartered under chap. 47, Code, thus preventing appointments to fill the vacancies because of the inability of the minority to act, will not be effective, and will not absolve them from the discharge of official duties. (p. 567).

2.  MANDAMUS—*Writ Will Lie to Compel Members of Common Council Who Have Resigned to Act as Board of Canvassers.*

    Mandamus will lie to compel the members of the common council of such municipality, including those members who have so attempted to resign, to convene as a board of canvassers and to canvass the vote returned in a regular municipal

election for town officers, declare the result and cause proper certificates to be issued to the persons elected. (p. 567).

3.  SAME—MUNICIPAL CORPORATIONS—*Officers Attempting to Resign May be Compelled to Perform Duties Until Successors Appointed.*

Urgent public duties can not be avoided by a municipal officer by resigning from his office in such a way and manner as to prevent the selection and qualification of his successor and prompt performance of such duties; and he will be compelled by judicial mandate to perform them until his successor is legally elected or appointed and qualified. (p. 567).

Mandamus by the State, on the relation of W. H. Westfall and others, against R. S. Blair, Mayor, and others.

*Writ awarded.*

*S. A. Powell,* for relators.
*R. S. Blair,* for respondents.

LIVELY, JUDGE:

W. H. Westfall, Guy R. Moats, R. R. Hall, W. W. Lawrence, J. G. Cooper, Gilbert Hoyden and Daniel Starr, claiming to have been legally elected as members of the common council of the town of Harrisville, a municipality incorporated under ch. 47, Code, 1918, Ritchie County, at a municipal election therein held on the 1st Tuesday in January, 1921; W. H. Westfall as mayor, Guy R. Moats as recorder, and the other named persons as councilmen, all composing the then elected common council, seek peremptory writ of mandamus to compel the common council in office when the election was held to meet as a board of canvassers and to canvass the returns, certify the result of the election and issue proper certificates to those elected. The petition charges that R. S. Blair, P. G. Smith, W. A. Knapp, E. M. Pierpont, L. R. Fox, James Murphy and W. W. Lawrence composed the common council at the time of the election and should have met after said election, on the 5th day thereafter, Sunday excepted, canvassed the returns, declared the result, and issued proper certificates of election to those found to be elected, but did not, refused and still refuse to do so. The petitioners aver, on information, that said common council (with the exception of James Murphy) did meet on the fourth day after the election,

Sunday excepted, when the resignations of W. A. Knapp, James Murphy, E. M. Pierpont and L. R. Fox were tendered collectively and accepted by the council, Knapp, Pierpont and Fox voting to accept the resignations; and petitioners charge that said resignations, so made and accepted, were null and void and of no effect; and aver that other members of the council, Blair, mayor, Smith, recorder, and Lawrence, councilman, have not filled nor attempted to fill the supposed vacancies, nor canvassed said returns, giving as a reason therefor that there is no quorum in the council. Petitioners aver that the interests of the citizens of the town demand an immediate determination of the result of the election; that petitioners are the duly elected officers, with terms beginning on the 1st day of February, 1921, and pray, as before set out, or, in the alternative, if the court so determine, that the remaining members of the council be commanded to fill the vacancies, and the council, thus constituted, be commanded to convene and act in the premises.

Respondents, in their return, deny that R. S. Blair, mayor, and P. S. Smith, recorder, are, under the provisions of chap. 47 of the Code, members of the common council in a sense that would make them *ex officio* members of the board of canvassers, and aver that they, the mayor and recorder, have no duty to perform in ascertaining the result of the election, and cannot be compelled by mandamus so to do; that the sole authority is vested in the councilmen. The return admits that the common council has not canvassed the vote at any time; that it did meet two days before the time fixed by law to canvass the vote and declare the result, at which meeting the four councilmen named in the petition as having resigned did resign in a body, and their resignations were accepted; that by reason of their resignations, accepted by a competent vote of the council, there was after that time no quorum, and no body competent or authorized to again meet and canvass the vote, and no authority in remaining officers to fill the vacancies. Respondents aver that they had a right to vote on the resignations of the four members presented in a body, and in that way create vacancies. Respondents Knapp, Pierpont, Fox and Murphy give no reason for resigning, except to say "they are acting in good faith and believe they are within their rights; and they state

that they have refused to meet as a canvassing board for the reason that they no longer possess the power or authority to do so. The mayor asserts that he has no power or authority to reconvene the council, now *functus officio,* and has no desire to remain in office as a hold over, in violation of the expressed will of the voters, if that expressed will can be legally ascertained, announced and certified; and respondents join with petitioners in asking some judicial order by which the municipal government may be placed on some sure basis of legal authority.

The petition and answer present no material conflict of facts. The questions to be determined are:  (1) Can municipal councilmen, elected and qualified under chap. 47 of the Code, vote to accept their own resignation, thus preventing a quorum for the transaction of municipal governmental business?  (2) Can a majority of the common council, elected and qualified under said chapter, resign, and, before their successors are elected or appointed and qualified, be compelled by mandamus to perform necessary and urgent official duties?  (3) Can a majority of such councilmen tender and vote upon their own resignations, making it impossible to fill the vacancies, if any, and thereby escape performance of official duties and cause the municipal government to cease to function?  All these questions are closely correlated, and one answer is sufficient for all.  Our answer is in the negative.

The mayor and recorder are expressly made members of the common council by sec. 13, chap. 47 of the Code, and the municipal council is the board of canvassers for municipal elections under chap. 3 of the Code.  It is clear that the mayor and recorder, together with the councilmen, compose the municipal board of canvassers.  *State* v. *Fitzpatrick,* 85 W. Va. 446.  We hold that these councilmen have not effectually resigned and cannot escape their duty to meet as a board of canvassers, together with the mayor, recorder and the remaining councilman, canvass the returns, declare the result, and issue proper certificates of election.  It is the policy of our laws that officers elected or appointed shall serve until their successors are elected or appointed and qualified.  The term of office of municipal officers, in towns chartered under chap. 47, Code (Harrisville being one of that class) begins "on the 1st day of February, and

continues for one year and until their successors are elected and qualified according to law." Sec. 16, ch. 47, Code. The services of officers are necessary to government, and any vacancy in office, especially in an office which is necessary for government, tends to disorganization and disruption. In our form of government citizens must, in order to carry it on, accept public office and render official service. The State has the right to demand faithful official service from every citizen selected, within proper limitations and conditions, and under this principle laws in some jurisdictions have been predicated and upheld which impose penalties on a citizen who refuses to serve after having been selected for an elective office. This principle was well settled at common law. Compulsory jury service, enforced services as election officers, compulsory service in making arrests and the like, are examples of the principle, and it is not perceived why personal services in an official capacity may not be demanded, when the State demands one's property or the risk of one's life to preserve society. There is no good reason why, if an officer is required to serve after his term has expired, that one who has resigned shall not also serve until his successor has been elected or appointed. But it may be affirmed that the provisions of our laws for filling vacancies would excuse the resignation of an officer whenever necessity or whim dictated his resignation, and that the easy facilities for filling vacancies will militate against this principle of continuous, full and faithful public service. But in the case at bar these very councilmen have attempted, designedly or unwittingly, to prevent the orderly progress of municipal affairs by making it impossible for the filling of their attempted vacancies. It is beyond consideration to allow an officer to resign, when by so doing he forces the government to cease functioning. Would a county clerk be permitted to resign and close up his office before his successor could be appointed and qualified, thus preventing the recording of valuable title papers and the like? Or could a circuit clerk do the same and prevent the institution of urgent litigation to protect private rights, or preserve government; or thus temporarily stop the orderly procedure of the court? This theory of the freedom of resignation, giving unrestricted liberty

to an officer to surrender his office at will, should be discountenanced, where the result would be a calamity to public welfare.

A proceeding in mandamus was instituted against a town supervisor in Illinois to compel him to execute, on behalf of the town, certain bonds, and his return to the alternative writ gave as a reason why he could not obey, that he had resigned his office, his resignation had been accepted, and his successor elected; but it did not appear that his successor had qualified. The writ was made peremptory notwithstanding his resignation. The court held that under the laws a person elected should serve until his successor was elected, or appointed, and qualified; and that the same rule would apply to a resignation, and an officer who had resigned was not *functus officio* until his successor was selected and qualified. The supervisor had resigned evidently for the purpose of preventing the bonds from being executed and delivered. *People* v. *Supervisor*, 100 Ill. 332. The Supreme Court of the U. S. made a similar decision, holding that where a town officer seeks to prevent the performance of a duty, by a hasty resignation, he must see that he resigns not only *de facto* but *de jure*; that he resigns his office not only, but that a successor is appointed. The court said: "An attempt to create a vacancy at a time when such action is fatal to a creditor will not be helped out by aid of the courts." *Badger* v. *Bolles,* 93 U. S. 599. "An officer whose resignation has been tendered to the proper authorities and accepted, continues in office and is not released from its duties and responsibilities until his successor is appointed or chosen and qualified." *Jones* v. *City of Jefferson,* 66 Texas 576. See Dillon, Mun. Corp. (5th Ed.) Sec. 1522. A resigning officer must continue in the discharge of his duties until his successor is elected or appointed and qualified, and mandamus will lie to compel him to perform his duties. *U. S. ex rel. Watts* v. *Justices of Lauderdale County,* 10 Fed. 460. Where municipal officers were served with writ of mandamus to compel payment of a debt, and immediately resigned, their resignations accepted, and an adjournment, *sine die,* and no others elected to take their places, held that they were still the governing body of the city. The statute provided that the city officers should hold office during their official term,

and until their successors were elected and qualified. *U. S.* v. *Green,* 53 Fed. 769.

We think the principle enunciated in the authorities above cited controls this case; and as the attempted resignation of the respondent councilmen is abortive, and does not relieve them of their duty to meet, canvass, declare and certify the result of the election, we deem it unnecessary to decide whether these councilmen could all in a body, at one time, resign, and vote acceptance of their own resignations.

*Writ awarded.*