# CHARLESTON.

STATE *ex rel.* W. S. SIMON *v.* W. W. HEATHERLY

Submitted June 16, 1924.    Decided June 24, 1924

1. MANDAMUS—*Appeal From Action of Board Illegally Counting Votes for Opponent Not Exclusive of Mandamus.*

   While a candidate at a primary election may in a proper case, under section 22, chapter 5, Acts Third Extraordinary Session, 1916; section 26-A (22) chapter 3, Barnes' Code, 1923, appeal to the circuit court from the action of the board of canvassers, where the board counts illegal votes for his opponent, such remedy is not exclusive of the remedy by mandamus, as it is not equally as convenient and effective. (p. 688).

2. SAME—*Board of Canvassers in Primary Elections May be Controlled by Mandamus.*

   Under section 24, chapter 5, of the primary election law, Acts Third Extraordinary Session, 1916, Barnes' Code, 1923, section 26-A.(24), and section 89, chapter 3 of the general election law, Barnes' Code, 1923, a board of canvassers in the

exercise of its duties in relation to primary elections may be controlled by mandamus.   (p. 689).

3.   SAME—*Lies to Compel Primary Board of Canvassers to Reconvene and Correct a Recount.*

Where a board of canvassers recounts the votes cast at a primary election, and in such recount counts illegal ballots for a candidate, ascertains the result and adjourns, such board, at the relation of an opposing candidate who is thus defeated for nomination, may be compelled by mandamus under section 89, chapter 3, Code, to reconvene and correct any such recount.   (p. 690).

4.   PROCESS—*Process Awarded in Court May be Returnable as the Court Shall Direct.*

Under section 2, chapter 124, Code, process awarded in court may be returnable as the court shall direct.   It may be made returnable to any day in term.   (p. 690).

5.   ELECTIONS—*Law Requiring Both Poll Clerks to Indorse Ballots, Mandatory.*

The statute, section 13, chapter 5 of the primary law, (Acts, Third Extraordinary Session, 1916), requiring both poll-clerks to endorse their names upon the official ballots cast at a primary election is mandatory.   (p. 691).

6.   SAME—*Duty of Voter at Primary Election Before Casting Ballot Stated.*

It is the duty of a voter at a primary election before he casts his ballot to see that the names of both poll-clerks are endorsed upon the back of the ballot, and before handing it to the commissioner of election of his party to so fold it that the face shall not be exposed, but to show plainly the name of the voter's political party and the names of the poll-clerks endorsed thereon.   (p. 691).

7.   SAME—*Commissioners of Election Should See That Names of Both Poll Clerks Are Endorsed on Ballots.*

It is the duty of the commissioners of election to see that the ballot has the names of both poll-clerks endorsed upon the back thereof before placing it in the ballot box.   (p. 691).

8.   SAME—*Ballots on Which Either or Both Clerks Fail to Subscribe Names Void.*

A ballot, upon which either or both poll-clerks have failed to subscribe their names, whether cast at a primary or a general election, is void and can not be counted.   (p. 691).

9. SAME—*Ballots Cannot be Indorsed by Poll Clerks on Recount.*

Upon a recount of the votes cast at a primary election, where it is discovered that the name of either of the poll-clerks has been omitted from any of the ballots, such ballots can not thereafter be endorsed by the poll-clerks or either of them so as to make them legal ballots. (p. 693).

McGINNIS, JUDGE, absent.

Original mandamus by the State, on the relation of W. S. Simon, against W. W. Heatherly and others.

.                                      *Writ awarded.*

*W. T. George* and *J. Blackburn Ware,* for relator.

*H. G. Kump,* for respondents.

MEREDITH, PRESIDENT:

Petitioner, W. S. Simon, who was one of the Republican candidates for nomination for sheriff of Barbour County at the Primary Election held May 27th last asks for a peremptory writ of mandamus to compel the county commissioners of that county, sitting as a Board of Canvassers, to reject certain ballots which the board upon a recount insists should be counted for his opponent, Sherman Lindsey.

It appears from the alternative writ and return that upon a recount of the Republican Primary ballots, had at the instance of the petitioner, of the votes cast at precinct No. 2, known as "White Oak" precinct in Glade District, 28 were cast for Sherman Lindsey, one for W. S. Simon, and none for Andrew Stevens, all candidates for the Republican nomination for sheriff; and at precinct No. 1, known as "Galloway" in Pleasant District 39 votes were cast for Sherman Lindsey, 28 for W. S. Simon, and 13 for Andrew Stevens. It also appears that all of the Republican ballots cast at these two precincts were signed by the Republican poll-clerk only; that the Democratic ballots cast at the same precincts were signed only by the Democratic poll-clerk; that if the law requires that both poll-clerks sign all the ballots cast, the failure of the clerks to so sign was an innocent mistake, and it was not intended by either clerk by such failure to commit any fraud upon either voters or candidates.

It also appears that if these ballots be rejected it will result in the nomination of W. S: Simon, but if they be counted, Sherman Lindsey will be the nominee.

The jurisdiction of this court in this proceeding is questioned upon four grounds:

1. That the petitioner has a plain, adequate and complete remedy by appeal, to the circuit court under chapter 3, section 26-A (22), Barnes' Code, 1923.

2. That the primary election law makes no provision for controlling a board of canvassers in canvassing the returns of a primary election, or in counting or recounting the votes at such an election, and therefore the statutory remedy by appeal is exclusive.

3. That the board in the present instance has completed the recount and exhausted its function; therefore mandamus will not lie to compel its members to reconvene and perform their duties in a different way.

4. That the alternative writ issued by this court is not made returnable to the first day of the term, nor in the clerk's office to the first Monday in the month nor to a Rule day, as provided in section 2, chapter 124, Code, and is therefore void.

We will take up these points in the order stated.

Section 26-A (22), Chapter 3, Barnes' Code, provides:

> "The action of the board of canvassers, or of any political committee, at any primary election, may be appealed from by any candidate thereat, to the circuit court of the county, and from such court to the Supreme Court of Appeals. All such contests shall be governed by the provisions of the Code of West Virginia, so far as the same are applicable as found in chapter six thereof."

Is the remedy provided exclusive? We are cited to the case of *Doran* v. *Whyte*, 75 W. Va. 368, 83 S. E. 1025, where it was held that "A remedy given by statute which is as speedy and equally as efficacious as mandamus excludes the latter remedy." That involved an application here for a writ of mandamus to compel a county clerk to execute a tax-deed to the petitioner for some lands purchased by him

at a tax-sale. It was refused because section 22, chapter 31, Code, 1913, gave a speedy and effective remedy, by providing that the purchaser might, upon ten days' notice to the clerk, apply by petition to the circuit court, or Judge thereof in vacation, and obtain an order for the execution of the deed. That is certainly speedy and effective. But a week earlier, in *Eureka Pipe Line Company* v. *Riggs, Sheriff*, 75 W. Va. 353, 83 S. E. 1020, it was held that "The remedy given by section 39, chapter 39, Code, 1899, against a sheriff, for failure to pay county orders drawn on him, that remedy not being as competent to afford relief on the subject matter and one equally as convenient, beneficial, and effective, is not exclusive of the remedy by mandamus; it is cumulative only of that common law remedy." The true test is whether there is another remedy equally convenient, beneficial and effective. If so, mandamus will not lie. Here there is a remedy provided by a so-called appeal; but while it may be effective, yet it is not as convenient or beneficial. We have heard much of the law's delays, and all are fully cognizant of the great opportunity for delay in the trial and disposition of cases. If petitioner were compelled to proceed by appeal, his case would take its turn on appeal in the circuit court; it must be disposed of in term, which might be months after the recount by the board of canvassers. Meantime neither party would know which one was nominated. The defeated party might, under the statute, obtain an "appeal" to this court, where it would take its turn upon the docket, and the general election might be held before it could be determined who was the legal nominee. Under such circumstances it can hardly be held that the statutory appeal affords a remedy equally convenient and effective as that of mandamus, and therefore that it is exclusive.

The second objection is that there is no specific provision in the primary election law for controlling the action of the board of canvassers by mandamus. That seems to be true. Section 89, chapter 3, Barnes' Code, 1923, provides for mandamus to control the board of canvassers in the exercise of their duties in relation to general elections; section 98-A (16) of the same chapter affords a like remedy in matters of registration of voters. But the primary election statute, in

section 26-A (24), chapter 3, Code, provides: "All provisions of chapters three and five of the Code of West Virginia, so far as the same are not in conflict with and are not modified by this act, shall, so far as they are germane, apply to and are hereby made applicable to the primary elections." Section 89, Chapter 3, Code, is germane and not in conflict with the primary election statute. Therefore, that section is applicable to primary elections and gives ample authority to courts to compel by mandamus in any proper case any officer or person to perform any duty devolved upon him under the primary election law. Section 89 provides that "A mandamus shall lie from the Supreme Court of Appeals, or any one of the judges thereof in vacation, returnable before said court, to compel any officer herein to do and perform legally any duty herein required of him." This applies to primary as well as to general elections; the second objection is therefore not well taken.

The third objection is equally unfounded. It was held in *Daniel v. Simms,* 49 W. Va. 554, 39 S. E. 690, that "If a board of canvassers adjourn, without having legally performed its duties under section 68 of chapter 3 of the Code, such board may be reconvened by writ of mandamus under section 89 of said chapter and compelled thereby to correct any errors it may have committed in attempting to perform such duties." That case involved a general election, but the law there stated is clearly applicable here. If it were not, a board of canvassers might wilfully disregard the law, by counting ballots for one candidate when they were voted for another, declare the result and adjourn, and thus compell the defeated candidate to proceed by appeal or other method of contest. The duties of the board are not performed until they are performed legally; until that is done, its action may be controlled by mandamus. See *Stafford v. Sheppard,* 57 W. Va. 84, 50 S. E. 1016.

Nor is there any merit in the fourth objection. Section 2, chapter 124, Code, provides that "process awarded in court may be returnable as the court shall direct." The territorial jurisdiction of this court is co-extensive with the boundaries of the state; it may direct its process to the sheriff of any county in the state and make it returnable to

any time that will suit the convenience of the court and the parties involved. The alternative writ in the instant case was issued in term and made returnable to a specified day in term. The usual and proper course was followed.

From what we have said it necessarily follows that this court has jurisdiction to award a peremptory writ requiring the Board of Canvassers to reconvene and reject the ballots counted by them upon which the name of only one poll-clerk was signed, if that be proper; so the next question is whether a primary election ballot must be signed by both poll-clerks in order to make it a ballot that may be legally voted, or to make it a legal ballot, if cast. Section 26-A (12), chapter 3, Barnes' Code, 1923; (section 12, chapter 5, Acts, Third Extra Session, 1916), provides for the form and contents of the primary ballots. "On the back of the ballot shall be printed in black ink, and in plain, legible, black face pica type the name of the political party as contained in the heading; followed by the word 'ballot'. Under this designation' shall be printed two blank lines followed by the words 'poll-clerks' ". The next following section, among other things, provides:

> "The clerks shall write their names at the place desig-
> nated on the back of the official ballot called for, and
> deliver it to the voter, who shall have but one ballot,
> unless he shall return the same spoiled; if he shall re-
> turn the same spoiled, the clerks shall immediately de-
> stroy the ballot so spoiled, and deliver to him another
> ballot in the same manner as they delivered the first one.
> * * * * After preparing the ballot the voter shall fold
> the same so that the face shall not be exposed, but so
> fold it as to show plainly the name of the political party
> and the names of the poll-clerks signed thereon. The
> voter shall then announce his name and present his ballot
> to the commissioner of his party, if there be one, who
> shall hand the same to another election officer, who shall
> deposit it in the ballot box; *provided,* that said ballot
> is the official one properly signed."

Section 36, chapter 3, Barnes' Code, 1923, requires the poll-clerks to sign the ballots voted at general elections. Section 61 provides that "No commissioner of election shall deposit in the ballot box any ballot upon which the names of the poll-

clerks, as hereinbefore provided for, do not appear." Section 66 provides that "Any ballot which is not endorsed with the names of the poll-clerks, as provided in this chapter, shall be void and shall not be counted."

In construing these provisions in *Kirkpatrick* v. *Deegans,* 53 W. Va. 275, 44 S. E. 465, it was held that they were mandatory. The court there said (points 2 and 3, syllabus):

> "The purpose of said clauses is to secure identification of the ballots voted, so as to distinguish them from all unvoted official ballots, as well as from all spurious ballots, in the interest of the purity of elections and the preservation of the secrecy of the ballot. Hence the words, 'shall write his name' mean that, the name of each poll-clerk shall be placed on the back of each ballot voted, in his own hand-writing, and ballots on which the names of both poll-clerks are written by one of them, or by some other person, are void and can not be counted. Such requirements, when mandatory, are basic and fundamental in their nature, and the declared consequences of violations. of them must follow, whether such violations result from mere ignorance or inadvertence, or actual fraud."

It is contended by respondents that because sections 61 and 66 of the general election law, quoted above, are omitted from the primary election statute, chapter 5, Third Ex. Sess. 1916, they do not apply to primary elections. But we can not so hold. They are germane and are not in conflict with any provision of the primary law; hence under section 24, chapter 5, Acts 1916, (3rd. Ex. Sess.), sections 61 and 66, chapter 3, Code, of the general election laws are made to apply to primary elections. The signatures of both poll-clerks upon all ballots voted, whether at primary or general elections, are essential to the preservation of the purity of the ballot and the fairness of the election. It is quite as important that primary elections be free from fraud as it is that general elections be free from fraud. In many instances party nomination to office means election, because one political party may have such a majority that the other can rarely overcome it at a general election. But if one poll-clerk may omit his signature from the ballot, so may the other. If this is done, the door to fraud and corruption is thrown wide open. The

so-called "endless chain" method of purchasing or otherwise influencing voters may then be employed almost with impunity, and fraud may in devious other ways find its way to the ballot box.  The mandatory requirement that the signatures of both poll-clerks shall appear upon the ballots in their own hand-writing constitutes one of the strongest and most essential safe-guards to fair elections that has yet been devised.  It is urged that the provision in section 34, chapter 3, Code, that "No ballot shall be rejected for any technical error which does not make it impossible to determine the voter's choice" should apply and therefore all the ballots in this present case should be counted because the voters casting the ballots were not at fault and it is not impossible to determine the voter's choice.  But not so.  This provision relates to the determination of the voter's choice and presupposes the casting of a legal ballot.  A ballot which does not have the names of both poll-clerks endorsed thereon as mandatorily prescribed by the statute is not a ballot; it has no more force and effect than a piece of blank paper.  The statute requires that the ballot voted must be an "official ballot"; surely a "sample ballot", if voted, could not be counted, as it would not be a legal ballot, and yet the voter's choice might be shown just as clearly on a sample ballot as on an official ballot.  There can be no doubt that the provision requiring both poll-clerks to sign their names upon the primary ballots is mandatory; any ballot cast which omits the names of either or both poll-clerks should not be put in the ballot box by the commissioners and if it is, it should not be counted, because it is not in law a ballot at all.  Therefore all the ballots in the instant case from which the names of either poll-clerk has been omitted should be rejected and not counted.

Respondent Lindsey insists that the poll-clerks should be summoned in by the board of canvassers and be permitted to sign the ballots where their signatures are wanting; but we think the board very properly refused this request.  The law contemplates that a legal ballot shall be placed in the hands of the voter when he undertakes to vote; to render it a legal ballot it must be an "official ballot", bearing the signatures of both poll-clerks.  If it is not a legal ballot when cast, it can not be rendered a legal ballot days or weeks afterwards

by the poll-clerks endorsing their names thereon. The voter has no right to complain, because it is his right and duty before he casts it to see that the poll-clerks' names are endorsed upon it.

Respondent urges that certain ballots should be rejected because they bear certain distinguishing marks. This question has been fully answered in *Doll* v. *Bender*, 55 W. Va. 404, 47 S. E. 293, wherein it was held that "Distinguishing marks on a ballot will not cause its exclusion from the count."

We are therefore of opinion that a peremptory writ should issue requiring the members of the county court to reconvene as a board of canvassers to complete the recount of the ballots and in such recount to reject and refuse to count any and all ballots from which the signature of either poll-clerk has been omitted.

*Writ awarded.*