126 S.E.2d 181 (1962)
The W. E. LONG CO.-INDEPENDENT BAKERS' COOPERATIVE et al.
v.
Joe F. BURDETT, Secretary of State of West Virginia.
No. 12171.
Supreme Court of Appeals of West Virginia.
Submitted May 15, 1962.
Decided June 26, 1962.
*182 Peters, Merricks, Leslie, Kenna & Mohler, Lee M. Kenna, Charleston, for relators.
C. Donald Robertson, Atty. Gen., Andrew J. Goodwin, Asst. Atty. Gen., Charleston, for respondent.
HAYMOND, Judge.
The petitioners, The W. E. Long Co.-Independent Bakers' Cooperative, an association, Don F. Copell, its President, and Betsy Ross Bakeries, Inc., in this original proceeding in mandamus instituted in this Court on April 2, 1962, seek a writ to require the defendant, the Honorable Joe F. Burdett, Secretary of State of the State of West Virginia, to register and deliver a proper certificate for the trade-mark known as "Flavor-Spun" in the name of The W. E. Long Co.-Independent Bakers' Cooperative and to cancel a certificate relating to such trade-mark issued by him March 5, 1962, in favor of Purity Baking Company.
Upon the petition this Court issued a rule returnable May 1, 1962, at which time the defendant filed his demurrer and his answer to the petition; and on joint motion of the parties this proceeding was continued until May 15, 1962. At that time the attorneys for the respective parties filed a written stipulation of the material facts involved in this controversy; and this proceeding was submitted for decision upon the foregoing pleadings and stipulation and the written briefs and the oral arguments in behalf of the respective parties.
These pertinent facts are incorporated in and established by the stipulation of the attorneys for the respective parties: On February 14, 1962, Purity Baking Company by telephone communicated with the office of the secretary of state and requested that the trade-mark known as "Flavor-Spun" be reserved for it by the secretary of state; and on that date that company sent a letter to the secretary of state confirming the reservation and stating that "it is a *183 matter of importance that this trade-mark be held for the company until it can qualify for its registration by its actual use." On February 16, 1962, The W. E. Long Co.-Independent Bakers' Cooperative mailed to the secretary of state its application to register the same trade-mark, "Flavor-Spun", which application was complete in all respects and was accompanied by the required counterparts or facsimiles and check for the statutory filing fee. The application and the accompanying papers were received by the secretary of state in the usual course of mail on or about February 19, 1962. On February 23, 1962, an employee in the office of the secretary of state, to whom the secretary of state had delegated the duty of handling the registration of trade-marks, notified the attorney for Purity Baking Company that the application of The W. E. Long Co.-Independent Bakers' Cooperative had been received by the secretary of state and that as the secretary of state had reserved that trade-mark for Purity Baking Company he should bring the completed application of that company to the office of the secretary of state. The attorney presented such application on February 23, 1962; and although that application, which was not marked "filed", asserted that Purity Baking Company had adopted and used the trade-mark, the date it was first used was not inserted, and the employee was informed that the trade-mark had not actually been used by that company. The employee then informed the attorney for Purity Baking Company that its application would be placed in a "pending" file. On the same date the secretary of state returned the application of The W. E. Long Co.-Independent Bakers' Cooperative with a letter stating that he could not accept the application or the check because the trade-mark had been reserved for registration and an application was pending in behalf of the Purity Baking Company. On March 5, 1962, that company called the office of the secretary of state and stated that the trade-mark had been used on March 3, 1962, and asked that this date be inserted in its application. This was done. The application was marked "filed on March 5, 1962", and a certificate was issued to Purity Baking Company, awarding it the trade-mark designed "Flavor-Spun", and it requested that additional copies of the certificate be issued. By their letter of February 16, 1962, and subsequently on or about March 5 or 6, 1962, the petitioners requested the defendant to register the trade-mark "Flavor-Spun" in the name of The W. E. Long Co.-Independent Bakers' Cooperative.
The defendant having refused to grant the application of the petitioners, they instituted this original proceeding in this Court.
Article 2, Chapter 47, Code, 1931, as amended, relates to the registration and use of trade-marks in general, and in Section 1 authorizes certain persons who have heretofore adopted or used, or shall hereafter adopt or use, any label, trade-mark, term, design, device or form of advertisement, to register such label, trade-mark, term, design, device or form of advertisement, in the manner set forth in Section 2. That section contains these provisions:
"Every such person, firm, corporation, association or union that has heretofore adopted or used, or shall hereafter adopt or use, a label, trade-mark, term, design, device or form of advertisement as provided in the preceding section may register the same by filing the same for record in the office of the secretary of state by leaving two copies, counterparts or facsimiles thereof, with said secretary and by filing therewith a sworn application specifying the name or names of the person, association or union on whose behalf such label, trade-mark, term, design, device or form of advertisement shall be filed, the class of merchandise and a description of the goods to which it has been or is intended to be appropriated, stating that the party so filing or on whose behalf such label, trade-mark, term, design, device or form of advertisement shall be filed, has the right to the use of the same, that no other person, firm, association, *184 union or corporation has the right to such use, either in the identical form or in any such near resemblance thereto as may be calculated to deceive, and that the facsimiles or counterparts filed therewith are true and correct. There shall be paid for such filing and recording a fee of five dollars. The secretary of state shall deliver to such person, firm, corporation, association, or union, so filing or causing to be filed any such label, trade-mark, term, design, device or form of advertisement, so many duly attested certificates of the recording of the same as such person, firm, corporation, association or union may apply for, for each of which certificates said secretary shall receive a fee of five dollars. Any such certificates of record shall in all suits and prosecutions under this article be sufficient proof of the adoption and registry of such label, trade-mark, term, design, device or form of advertisement. The secretary of state shall not record for any person, firm, corporation, union or association, any label, trade-mark, term, design, device or form of advertisement, that would probably be mistaken for any label, trade-mark, term, design, device or form of advertisement theretofore filed by or on behalf of any other person, firm, corporation, union or association."
Other sections of the article deal with the penalty for counterfeiting, imitating or improper use, civil and criminal liability or fraudulent procurement of filing, remedies for unlawful use, and criminal liability for improper use of genuine labels, in connection with such symbols; and Section 9 provides that "Nothing contained in this article shall be construed as affecting or impairing any right or remedy at law or in equity for the protection of any label, trade-mark, term, design, device or form of advertisement, whether or not the same is registered under the provisions hereof."
The petitioners, in support of their application for the writ for which they pray, contend that the provisions of Section 2 of the statute with respect to the duty of the secretary of state to register the trade-mark are mandatory and impose upon him the nondiscretionary duty to register such trade-mark and to issue a duly attested certificate of the recording of the trade-mark applied for upon compliance by the applicant with the terms and conditions set forth in that section; that the secretary of state is without any authority whatsoever to reserve any trade-mark or other symbols mentioned in the statute for any person in advance of the filing of a proper application; that, as the petitioners have complied with the requirements of the section and filed proper application before a sufficient application was filed by Purity Baking Company, it is the duty of the secretary of state to deliver to the petitioner, The W. E. Long Co.-Independent Bakers' Cooperative, a duly attested certificate of the recording of the trade-mark known as "Flavor-Spun" and to annul the certificate previously issued to Purity Baking Company; and that the duty of the secretary of state to take such action may be enforced by mandamus.
On the contrary the defendant contends in substance that mandamus is not the proper remedy to require the secretary of state to register a trade-mark and deliver a certificate of its registration; and that before the petitioners can obtain relief by mandamus they must establish a prior property right to the trade-mark which they seek to have registered.
Each of the foregoing contentions of the defendant is devoid of merit and must be rejected.
The unambiguous and mandatory provisions of Section 2 of the statute impose a nondiscretionary ministerial duty upon the secretary of state to register a trade-mark applied for and deliver the certificate mentioned in the statute to an applicant who files a proper application and complies with and satisfies the requirements specified in the statute. That the petitioners have complied with and satisfied the statutory requirements is established by the undisputed facts stipulated between the parties. The statute does not authorize or *185 permit the secretary of state to reserve for any person, to the exclusion of another applicant, a label, trade-mark, term, design, device or form of advertisement, before such person files with the secretary of state an application which complies with the requirements of the statute. Any practice, even though it be of long standing, as here, which undertakes to permit or justify any reservation of that character is contrary to and is not warranted by the provisions of the statute and can not abrogate or suspend the operation of the statute or affect or impair the statutory right of any person to register a trade-mark or other symbol as provided by the statute.
The secretary of state is without authority to register a trade-mark and deliver the certificate mentioned in the statute until the requirements of the statute have been complied with and satisfied, and he is likewise without authority to reserve a trade-mark for a person who indicates his intention to file but has not filed the application required by the statute.
The registration of a trade-mark under Section 2, Article 2, Chapter 47, Code, 1931, as amended, does not involve or determine the title or ownership of a trade-mark for which registration is sought and granted. Any dispute concerning the title and ownership of a trade-mark is a matter for judicial determination and such question can not be considered or determined by the secretary of state, who is an administrative officer and as such does not possess and may not exercise judicial power or authority. Section 9 of the statute indicates clearly that the title and ownership of a trade-mark are not determined or concluded by its registration under the statute and that the title and ownership of a trade-mark, regardless of its registration, are to be determined in a proper proceeding between adverse claimants whether such trade-mark has or has not been registered in the name of any such claimant. It is also clear that any dispute concerning the title to the trade-mark here involved between the petitioners and Purity Baking Company can not be considered or determined in this proceeding for the reason that the secretary of state has no power or authority to consider or determine such question, and the additional reason that no dispute involving the title or ownership of the trade-mark between the petitioners and Purity Baking Company as a claimant is or could be presented or determined in this proceeding to which that company is not a party.
The petitioners, having fully satisfied the requirements of Section 2 of the statute, were entitled to have the trade-mark designated "Flavor-Spun" registered and under the mandatory provisions of the statute it was the nondiscretionary ministerial duty of the defendant to grant the application of the petitioners to register that trade-mark in the name of the petitioner The W. E. Long Co.-Independent Bakers' Cooperative and to deliver to it the duly attested certificate provided by the statute, and to cancel the invalid registration and certificate as to that trade-mark issued by him in favor of Purity Baking Company on March 5, 1962; and mandamus lies to require the defendant to discharge such duty. A writ of mandamus will issue to require the discharge by a public official of a nondiscretionary duty. State ex rel. Jarrell v. Walker, 145 W.Va. 815, 117 S.E. 2d 509; State ex rel. Chambers v. The County Court of Logan County, 145 W.Va. 581, 116 S.E.2d 125; State ex rel. Zickefoose v. West, 145 W.Va. 498, 116 S.E.2d 398; State ex rel. Myers v. Straughan, 144 W.Va. 452, 108 S.E.2d 565; State ex rel. Pitts v. Chambers, 144 W.Va. 224, 107 S.E.2d 512; State ex rel. Vance v. Arthur, 142 W.Va. 737, 98 S.E.2d 418; State ex rel. Dewey Portland Cement Company v. O'Brien, 142 W.Va. 451, 96 S.E.2d 171; State ex rel. Revercomb v. O'Brien, 141 W.Va. 662, 91 S.E.2d 865; Maynard v. Layne, 140 W.Va. 819, 86 S.E.2d 733; State ex rel. Board of Governors of West Virginia University v. Sims, 140 W.Va. 64, 82 S.E.2d 321; Duncan v. The County Court of Cabell County, 138 W.Va. 106, 75 S.E.2d 97; State *186 ex rel. West Virginia Commission on Interstate Cooperation v. Sims, 135 W.Va. 257, 63 S.E.2d 524; State ex rel. The West Virginia Board of Aeronautics v. Sims, 129 W.Va. 694, 41 S.E.2d 506; Glover v. Sims, 121 W.Va. 407, 3 S.E.2d 612; Draper v. Anderson, 102 W.Va. 633, 135 S.E. 837; State ex rel. Westfall v. Blair, 87 W.Va. 564, 105 S.E. 830, 19 A.L.R. 35; Boggess v. Buxton, 67 W.Va. 679, 69 S.E. 367, 21 Ann.Cas. 289; Capito v. Topping, 65 W.Va. 587, 64 S.E. 845, 22 L.R.A.,N.S., 1089; Marcum v. Ballot Commissioners, 42 W.Va. 263, 26 S.E. 281, 36 L.R.A. 296. See also State ex rel. Chambers v. The County Court of Mingo County, W.Va., 123 S.E.2d 241; State ex rel. Bullard v. County Court of Clay County, 141 W.Va. 675, 92 S.E.2d 452; State ex rel. Daugherty v. County Court of Lincoln County, 127 W.Va. 35, 31 S.E.2d 321; State ex rel. Simon v. Heatherly, 96 W.Va. 685, 123 S.E. 795; Pack v. Karnes, 83 W.Va. 14, 97 S.E. 302; Stafford v. Sheppard, 57 W.Va. 84, 50 S.E. 1016; 12 Michie's Jurisprudence, Mandamus, Section 7. In the Daugherty case this Court, in considering the effect of the failure of the members of a board of canvassers to do that which it was their mandatory duty to do, used this quotation from point 2 of the syllabus in Pack v. Karnes, 83 W.Va. 14, 97 S.E. 302, "Until they have performed their duties lawfully, in contemplation of law they have not performed them at all." In State ex rel. Simon v. Heatherly, 96 W.Va. 685, 123 S.E. 795, this Court, discussing the duties of a board of canvassers, said "The duties of the board are not performed until they are performed legally; until that is done, its action may be controlled by mandamus." In 12 Michie's Jurisprudence, Mandamus, Section 7, the text contains this language: "The mere fact that an act has been done, if it was a purely ministerial act, has no effect upon the remedy of mandamus, if that act is not the one which it was the duty of the respondent to perform. Whatsoever ministerial action the respondent may take which is contrary to the statutory authority which imposes upon him the duty in question is null and void; it is as if it had never been taken; and the action which his statutory duty imposes upon him remains still unperformed."
As previously indicated, no issue involving any conflicting claim to the title or ownership of the trade-mark designated "Flavor-Spun" is involved in this proceeding. The sole question to be determined is whether the application of the petitioners satisfies the statutory requirements and in consequence entitles them to have the trade-mark registered in the name of the petitioner, The W. E. Long Co.-Independent Bakers' Cooperative. The function of the secretary of state in administering the statute is administrative in character. His authority is derived wholly from the statute and he is governed by its terms and provisions. Whether registration is granted or refused, the parties in interest and their rights and equities under the common law remain legally unaffected, except to the extent that they are regulated by the provisions of Article 2 of the statute, and none of the provisions of that article applies to or affects the title or ownership of the trade-mark in question.
The law is well settled by the decisions of appellate courts in many jurisdictions that federal and state statutes do not create a trade-mark; that a trade-mark arises from use, not registration; and that the right to a trade-mark is in the nature of a property right based on common law. Campbell Soup Company v. Armour and Company, 3 Cir., 175 F.2d 795; 87 C.J.S., Trade-Marks, etc., Section 132. That section contains this language: "State statutes providing for the registration of trade-marks are in affirmance of the common law and remedies given by such statutes are either declaratory or are cumulative and additional to those recognized and applied by the common law. Where the statutory provision applies only to words, marks, or symbols which have already become trade-marks by adoption and user, and the purpose of registry is merely to facilitate the remedy, *187 registration confers no new rights; it does not give the registered marks the quality of trade-marks if they are not already such." The title to a trade-mark is independent of its registration. Great Atlantic & Pacific Tea Company v. A. & P. Radio Stores, Inc., D.C., 20 F.Supp. 703. Trade-mark rights are not created by registration. Such rights have long been recognized at common law and arise from the mere use and adoption of the trade-mark. Trade-Mark Law and Practice, Lanham Act Edition, Amdur, Chapter XI, Section 2; Pulitzer Publishing Company v. Houston Printing Company, D.C., 4 F.2d 924; Adrian v. Unterman, 281 App.Div. 81, 118 N.Y.S.2d 121. Registration can not confer a title to a trade-mark, if some other person has acquired a prior right by adoption and use; nor can it vest a title in the registrant as against the common law title of another person. Coca Cola Company v. Stevenson, D.C., 276 F. 1010; Carroll & Son Company v. McIlvaine & Baldwin, Inc., C.C., 171 F. 125. The general rule adopted by the courts is that state statutes providing for registration of trade-marks are in affirmance of the common law; and that the remedies given by such statutes are either declaratory or are cumulative and additional to those recognized and applied by the common law. Coca Cola Company v. Stevenson, D.C., 276 F. 1010; United States v. Steffens (Trade Mark Cases), 100 U.S. 82, 25 L.Ed. 550. The mere registration of a trade-mark does not of itself confer any greater rights than existed at common law without registration but only procedural advantages and does not enlarge the substantive rights of the registrant. Brown and Bigelow v. B-B Pen Company, 8 Cir., 191 F.2d 939; Best and Company v. Miller, 2 Cir., 167 F.2d 374; Griesedieck Western Brewery Company v. Peoples Brewing Company, 8 Cir., 149 F.2d 1019; 87 C.J.S., Trade-Marks, etc., Section 169a. In the opinion in United States Ozone Company v. United States Ozone Company of America, 7 Cir., 62 F.2d 881, are these statements: "Registration of a trade-mark simply constitutes prima facie evidence that the registrant is entitled to the mark, Henderson v. Peter Henderson & Co., 9 F. (2d) 787 (C.C.A. 7); 15 USCA § 96, and in itself gives no property right in the mark, Robertson v. U. S., 52 App.D.C. 368, 287 F. 942; Fulton Waterworks Co. v. Bear Lithia Springs Co., 47 App.D.C. 437; Spiegel v. Zuckerman, 188 F. 63 (C.C.A. 2); Anheuser-Busch, Inc. v. Cohen, 37 F. (2d) 393 (D.C.); United Drug Co. v. [Theodore] Rectanus Co., 248 U.S. 90, 39 S.Ct. 48, 63 L.Ed. 141. Nor is such registration controlling in a suit involving the common-law rights to the registered mark or in a suit for unfair competition involving its use. B. F. Goodrich Co. v. Kenilworth Mfg. Co. (Cust. & Pat.App.) 40 F. (2d) 121; Postum Cereal Co. v. California Fig Nut Co., 272 U.S. 693, 47 S.Ct. 284, 71 L.Ed. 478."
The writ of mandamus, as prayed for in the petition, is awarded.
Writ awarded.