# CHARLESTON.

## SANDERS v. BOARD OF CANVASSERS.

Submitted November 24, 1916.   Decided November 28, 1916.

1. ELECTIONS—*Canvassers—Board of*.

    The commissioners of the county court are ex officio a board of canvassers. They are required to convene as such canvassing board, at the court house, on the fifth day (Sunday excepted) after every election held in the county, or in any district thereof, to procure correct returns and ascertain the true result of such election in their county. (p. 306).

2. SAME—*Ballots—Duty of Officers*.

    It is the duty of the officers in whose custody the ballots, poll

books, tally sheets, and certificates have been placed, to lay the same before the said board of canvassers for examination. (p. 306).

3. MANDAMUS—*Board of Canvassers—Duties of.*

Where the ballots, poll books, tally sheets, and certificates have been stolen after being placed in the hands of the clerk of the county court and before being laid before the canvassing board for inspection, then it is the duty of the board of canvassers to examine and consider any and all reliable evidence available which will enable the board to ascertain the contents of such certificates; and for that purpose they may require the attendance of the election commissioners, poll clerks, or other persons present at the election, to appear and testify concerning the same; and any board of canvassers failing or refusing to perform such duty may be required to do so by writ of mandamus. (p. 306).

(LYNCH, JUDGE, dissenting).

(MILLER, JUDGE, absent).

Petition by Herbert W. Sanders for writ of mandamus against Joseph P. Cook and others, constituting the Board of Canvassers.

*Peremptory writ ordered.*

*M. F. Matheny* and *A. M. Belcher*, for petitioner.

*R. E. Hughes,* for respondents.

MASON, JUDGE:

At the general election held in Wyoming County, November 7, 1916, Herbert W. Sanders and W. B. Belcher were opposing candidates for sheriff of the county, and voted for as such. There were several voting precincts in the county, at which the election was held. The county court of said county met as a canvassing board on Monday, the 13th of November, 1916, as required by law, for the purpose of ascertaining and declaring the result of the election. When the ballots, poll books, tally sheets, and certificates from the several voting precincts of the county were laid before the board for examination, it was discovered that one of these boxes containing such papers was missing. The clerk of the county court, who was the legal custodian of these boxes, explained that the box and election returns from Precinct No. 2, in

Clear Fork District, had been stolen from the vault in his office the night before, and that the same had not been found, and for that reason the returns from that precinct could not be produced.  And it also appears that the poll books, tally sheets, and certificates required by law to be delivered to the clerk of the circuit court of said county had been deposited in the said ballot box and stolen with the set intended for the clerk of the county court; so that neither the set intended .for the clerk of the county court nor the set intended for the clerk of the circuit court could be produced.  Thereupon one of the candidates for sheriff—Sanders—offered to prove by witnesses who were present at said election, the result thereof, and was permitted to produce one of the commissioners and one of the poll clerks who assisted in conducting the election, and one of the challengers, and another witness who was present.  It was proven by these witnesses that the election was fairly conducted, the result ascertained, and that the poll books, tally sheets, and ballots were placed in the ballot box, and the keys dropped in the box.  One of the commissioners testified that the ballot box was placed in his custody and that he delivered the same in good condition to the clerk of the county court on the Thursday following the election, and that instead of returning one of the poll books and one of the tally sheets to the clerk of the circuit court as required by law, they were placed inside the ballot box and locked for safe keeping, and delivered with the other set to the clerk of the county court.  This evidence was allowed by the board of canvassers but afterwards stricken out on the motion of Belcher and against the protest of Sanders.

It is averred that the board of canvassers refused to hear said evidence and refused to make any inquiry whatsoever into the result of said election held at said precinct No. 2. And it is further alleged that the board of canvassers hold that "it was their duty to close the canvass of said election without considering, or attempting to ascertain, the result of said election at said precinct No. 2."

The petitioner, Herbert W. Sanders, asks for a writ of mandamus to compel the board of canvassers "to reinstate, hear and consider the evidence herein set forth, as well as

other legal, competent and proper evidence as may show, or help to show, the true result of said election held in said Precinct No. 2 in said county in so far as it relates to said office of sheriff,'' etc.  An alternative writ was issued; the defendants appeared and demurred; and the cause is submitted on the petition and demurrer thereto.

The only question presented for our consideration and determination is whether, in the absence of the ballots, certificates of election and poll books, it was the duty of the canvassing board to hear and consider other evidence in ascertaining the result of the election.

The ballot is the written memorandum of the voter's intention.  The certificate of election is the declaration of the result of the election as ascertained by the commissioners from the ballots.  Hence, the ballots, when identified as the ones cast by the voters, are the best evidence, and when they can be obtained and are in the condition they were in when deposited by the voter, they alone must be used in ascertaining the result of the election.  In declaring the result from the ballots the canvassing board would have the same evidence of the voters' intention and act that the commissioners had when the certificates were made by the commissioners at the close of the election, but if the ballots have been destroyed after the certificates are made up, or for any reason can not be produced, or if being produced, it appears that they have been tampered with since the certificates were made up and are so altered as not to show the voters' intention, then resort must be had to some other means by which to ascertain the result.  Next to an inspection of the ballots when produced and identified as the ones cast by the voters, the certificates of the result of the election made up from these ballots by the commissioners, are most reliable and should be considered by the board of canvassers, and the result of the election may be safely ascertained from such certificates.  *Williamson* v. *Musick*, 60 W. Va., at page 65; *McKinzie* v. *Hatfield, Mayor*, and others, 87 S. E. 879, not yet officially reported.

But in the case at bar the board of canvassers have neither the ballots nor the certificates.  The ballots, certificates, and tally sheets have all been stolen from the custody of the

officers and can not be laid before the canvassers. Shall the election officers cease their efforts here, to ascertain the result of the election, and permit without question the thief to disfranchise the voters? Certainly not. If the evidence produced to the canvassers is sufficient, they may prevent the fraud. While the ballot is in the hands of the voter, it belongs to him. He may cast it as he chooses. This is one of the most sacred privileges of an American citizen. When the ballot is placed in the hands of the proper officer of the state, it is the duty of the officer to preserve it and to see that it is counted as cast. Officers taking charge of the ballots should be held to strict accountability for the performance of such duties. It is just as much the duty of election officers to preserve the voter's ballot and count it as cast, as it is to permit him to vote. It is the duty of the board of canvassers charged with the duty of ascertaining and declaring the result of an election, to examine the ballots, poll books, tally sheets, and certificates laid before them by the person having them in custody, and if found necessary, "to require the attendance of any of the commissioners, poll clerks or other persons present at the election, to appear and testify respecting the same, and make such other orders as shall seem proper, to procure correct returns and ascertain the true result" of the election. Section 68, chapter 3 of the Code. The authority is ample, and the duty mandatory. If possible to avoid it, the voter should not be deprived of his vote by the negligence, accident, or wrongful act of election officers, or any other person. *Williamson* v. *Musick, supra.*

In the case at bar the ballots, certificates, tally sheets, and other memoranda made by the election officers and returned to the clerk of the county court, were stolen. No fault is imputed to the election officers or to the clerk of the county court. The petitioner asked leave of the board of canvassers to prove the result of the election by officers of the election who were present and participated in the election and aided in ascertaining the result of the ballots and in certifying the result. Surely this may be done in a proper case. The certificates of the election, if present, in the absence of the ballots, could be used as evidence, and in the absence of both

the ballots and certificates, evidence of the contents of the certificates may be proven under the same rules that evidence is admissible to prove the contents of any other lost instrument. The canvassing board, in the case at bar, should have heard and considered the proof respecting the contents of the certificates made up by the commissioners of election at the time, and if such proof makes clear the result of the election as shown by the certificates, the board of canvassers should receive such evidence and consider the same, giving to the proof the same effect that would have been given to the certificates had they been produced. It is essential in such cases that the loss of the certificates should be proven, and that the contents should be clearly and definitely established. *Board* v. *Callihan,* 33 W. Va. 209.

Counsel for the board of canvassers contend that the board can not be compelled by mandamus to canvass the vote under the circumstances. We can not endorse these views of counsel. As we have already said, the board of canvassers is charged with the duty of ascertaining and declaring the result of the election, and if it fails to perform this duty, the statute provides how such officers may be compelled to perform their duties. Section 98a (16), chapter 3 of the Code, provides: ''Any and all duties required of any person or officer by this act, may be enforced and compelled to be performed by such person or officer or court by writ of mandamus or other proper legal proceeding issued by the circuit court of said county, or the supreme court of appeals.'' This statute ''gives the writ of mandamus more scope than at common-law, rendering it a process to control them (the officers) as to all actions ministerial or judicial.'' *Marcum* v. *Ballot Commissioners,* 42 W. Va. 263. *Stanton* v. *Town of Wolmesdorff,* 55 W. Va. 601; *Daniel* v. *Simms,* 49 W. Va. 554.

The board of canvassers can not determine the qualifications of voters, or any such question. They simply ascertain and declare results. Whether these results are brought about by illegal voting or by other means, is no concern of the board of canvassers. Other means are provided by law to determine such controversies. Where it is within the power of the board of canvassers to ascertain the result of the elec-

tion, it is their duty to do so, and if they fail or refuse to perform this duty, they may be compelled by mandamus to do it.

We are of opinion that the petition on its face undenied, shows sufficient ground for mandamus, and will issue the peremptory writ as prayed for.

*Peremptory writ ordered.*

LYNCH, JUDGE, *(dissenting)*:

If the principles enunciated in the majority opinion be correct, and the county court sitting as a board of canvassers can hear evidence and from it determine the result of an election, they open wide the door for the perpetration of fraud against the will of the voters, and encourage evil designed persons to attempt to create just such or similar conditions as appear in this case. To construe the election statute to permit a ministerial body, one not empowered to exercise judicial functions, by proof, whether credible or not, to substitute the memoranda or recollection of witnesses in lieu of the mode prescribed by law, as I interpret it, is indeed very questionable. For just such a condition an adequate and available remedy exists, one in nature judicial, where there are requisite legal formalities, whereby a candidate, upon the service of a notice specifying the particulars with reference to which he claims the right to an office, may have a competent investigation of all the matters so specified, whether disclosed in the returns canvassed or not, and in this manner ascertain the true results of such an election as between rival claimants; either of whom, if aggrieved, may have a review by superior tribunals upon writs of error. With knowledge of this ample procedure in its possession, I can not consent to the supposition that the legislature intended to enlarge the restricted powers by statute committed to the board of canvassers, so as to permit it to perform functions assigned to tribunals established to determine contests between those who claim to have been elected by the voters to fill any public office. There appears nowhere any statutory provision that I have been able to find that can in my opinion be interpreted to authorize any such radical departure from the procedure legally established to test the

final accuracy of the expressed will of the voters. It may as well be said that the canvassers may ascertain by proof errors committed in permitting illegal voters to participate in an election, or in depriving a legal voter of such a right, as to hold that the board may, without the observance of any formality and without notice to the candidate, determine what the opinion allows it to do. One result is no more disastrous in its effect, nor more discordant with statutory regulations, than the other, as I understand them. Every claimant should have an opportunity to appear in defense of a right asserted to enjoy the emoluments of an office. The proceeding by canvassers is merely perfunctory in the discharge of the duties required of them.

Believing the conclusions expressed in the majority opinion are not in accord with essential statutory requirements relating to the ascertainment of election returns, I am constrained to dissent.