# CHARLESTON.

Homer Marquis *v.* J. B. Thompson *et al.*

(No. C. C. 438)

Submitted October 7, 1930. Decided October 14, 1930.

*Martin Brown*, for relator.
*Lloyd Arnold*, for respondents.

LIVELY, PRESIDENT:

Homer Marquis presented to the circuit court of Marshall County his petition for mandamus directed to the members of the board of canvassers, and its clerk, who canvassed the returns of the primary election held August 5, 1930, to compel them to reconvene if necessary and canvass the returns from precincts Nos. 10 and 11 and reject the returns from precincts Nos. 1 to 9, inclusive, in Washington District of that County in ascertaining the result of that primary as between himself and R. L. Dowdell, rival candidates for the Republican nomination for president of the board of education of that district, and to certify the result to the board of ballot commissioners for the coming election. On the same day (August 12, 1930) an alternative writ was issued in accordance with the prayer of the petition, and served on defendants. They appeared on September 20th in answer to the writ, demurred to the petition and moved to quash the writ, and also filed a return. The court sustained the demurrer, and quashed the alternative writ as not being sufficient in law, and held that mandamus was not petitioner's remedy. Upon joint application of the parties the court's ruling was certified here for review.

The petition with its exhibits, all made a part of the alternative writ, alleges in substance that Marquis and Dowdell were candidates on the primary ballot for the nomination for president of the said board of education on the Republican

ticket at the general election; that by Acts 1905, chapter 54, and amendments thereto, the Independent School District of Moundsville was created and carved out of the magisterial districts of Washington and Clay in said county, and that no person residing within the boundaries of said independent district is eligible to vote for the selection of a candidate for the office of president of the board of education for Washington District; that there are eleven voting precincts in Washington magisterial district, nine of which, numbered from 1 to 9, inclusive, are within the boundaries of the independent district and located far distant from the boundaries, and there are two voting precincts, Nos. 10 and 11, which are outside of the independent school district boundary. It is further averred that republican primary election ballots containing the names of Marquis and Dowdell, candidates as aforesaid, were sent to the election precincts Nos. 1 to 9, inclusive, and the voters in the independent district were permitted to cast their votes for the selection of a candidate for the office of president of the board for Washington district; that when the returns from the magisterial district were placed before the board of canvassers they proceeded to canvass and count the votes cast for Marquis and Dowdell by the residents of said independent district as shown by the returns from said precincts Nos. 1 to 9, inclusive, and determined from said canvass, including the votes cast at precincts Nos. 10 and 11, that Dowdell had received a majority of the entire vote cast; but they found the entire vote cast at precincts Nos 10 and 11 to be 367, of which Marquis had received 213 and Dowdell 154, making a majority of 59 votes in favor of Marquis. And the petition charges that said board of canvassers had no legal right to canvass and count the votes cast at precincts Nos. 1 to 9, inclusive, and only had legal right and duty to canvass the votes at precincts Nos. 10 and 11, and ascertain and certify the result from those two precincts alone. With the petition is filed an order entered by the canvassing board in which it appears that Marquis appeared before them when they were in session canvassing the votes and protested against their action in counting the votes from precincts Nos. 1 and 9, inclusive, and their action refusing to confine their canvass to the said two precincts,

the board being of the opinion it was their legal duty to count *all* the votes cast at all of the precincts, and ascertain which was the successful candidate therefrom.

The question presented by the demurrer is whether the voters residing in an independent school district are legally entitled to participate in a primary election for the selection of a candidate for president of the board of education of the district out of which the independent district is in part carved. The lower court by sustaining the demurrer has answered in the affirmative. However, the decree sustaining the demurrer recites that the petition and alternative writ are not sufficient in law, and that petitioner's remedy, if any, *is not by mandamus;* and it may be that the court concluded that the proper remedy had not been invoked. On the main proposition, namely, the right of the voters of an independent school district to participate in the selection of school officers outside of the independent district, we do not see on what basis that right may be maintained. The two organizations are separate and distinct. The officers of one have no control over the affairs of the other. If the voters of the independent district can select the school officers of the magisterial district, then by the same token, the voters of the magisterial district should have the right to participate in the selection of the independent school district officers. A casual inspection of the laws authorizing and creating independent school districts, defining their purposes and powers impel the conclusion that such districts are independent in reality as well as in name. The legal resident voters of the Independent School District of Moundsville had no right to vote in the primary for the selection of a candidate for president of the board of education of Washington magisterial district. But they have done so. How then shall the error be corrected? This brings us to consider the remedy here invoked.

By section 89, chapter 3, Code 1923, mandamus lies to compel the performance of a duty imposed on any officer of election by the election laws. The general election laws are applicable to primary elections. Section 26a (24), Chapter 3, Code. Mandamus in election cases, expressly authorized by statute, is intended to hasten the ascertainment and declara-

tion of results of elections, as well as the performance of other duties by election officers. *Kirkpatrick* v. *Deegans*, 53 W. Va. 275, 44 S. E. 465. It enlarges the scope of the writ, making it applicable to all the duties of election officers whether ministerial or judicial, and in respect to the ministerial duties, to operate as a certiorari, thus providing a summary review of the action of such officers. *Dunlevy* v. *County Court*, 47 W. Va. 513. The remedy is peculiarly applicable in primary election cases, where speedy settlement is required, so that the legally selected candidate may be placed on the ballot for the general election. To contest the selection of candidacy under the general election laws would often be useless for want of time. That remedy is not efficacious. Here we have a petition and alternative writ which aver that illegal votes have been canvassed and counted—votes not put in the ballot box by fraud, collusion or corruption, but votes which are clearly illegal under the statutes and which require no evidence or investigation to determine their illegality other than the returns themselves. This case is of the same character as *Kirkpatrick* v. *Dugans*, 53 W. Va. 275, and *Goff* v. *Board of Canvassers*, 56 W. Va. 675. In those cases mandamus was successfully employed to compel the board of canvassers to reject illegal ballots made so by the statute, ballots which did not have on their backs the name of each poll clerk in his own handwriting. The express words of the mandatory statute were that "any such ballot shall be void, and shall not be counted." We have no such mandatory provision to govern the instant case, but it is quite clear from the petition and writ (the only pleadings which can now be considered) that the ballots cast by the residents of the independent district have no effect in the result of the primary for the selection of a president of the board for the magisterial district, and therefore should not have been canvassed and counted. Suppose the residents of Clay magisterial district (a district adjoining Washington district) had undertaken to vote for Marquis or Dowdell, and the ballots so cast in a precinct in Clay district, by inadvertence, mistake or design, had been laid before the county board of canvassers, the defendants herein, and counted by them? Clearly mandamus would lie to compel rejection. The duty to reject is

equally apparent in this case, for as above stated, the independent district, and the magisterial district are separate and distinct political divisions in respect to the schools therein.

The argument of the respondents is that they have performed all the duties imposed upon them by the election laws, and they cannot determine the questions presented by the petition from other sources than the returns laid before them, and to do so would exceed their power and authority. We think the returns on their face, if the allegations of the petition be true, show that ballots counted were cast by voters of the independent school district. No outside evidence would be necessary.

We are of the opinion that mandamus is the proper remedy, that the petition and alternative writ are sufficient in law, and therefore reverse the ruling of the lower court, and so answer the question certified.

*Ruling reversed.*