OWEN L. DUNCAN

*v.*

THE COUNTY COURT OF CABELL COUNTY, *et al.*

(No. 10543)

Submitted February 10, 1953. Decided March 24, 1953.

*Joe A. McVay,* for petitioner.

*Philip P. Gibson, Buford C. Tynes,* for defendants.

LOVINS, JUDGE:

This original proceeding in mandamus was instituted by the relator Owen L. Duncan, the Republican nominee at the general election held November 4, 1952, for the office of councilman of the first ward of the City of Huntington, Cabell County, West Virginia, against the County Court of Cabell County, a corporation, James Brady,

James M. Donohoe and Frank Heiner, Commissioners of the County Court of Cabell County, and as such, ex officio, the board of canvassers of Cabell County, West Virginia, and David Fox, Jr., the Democratic nominee for the above office of councilman.

The relator prays for a writ of mandamus to require the County Court to reconvene as a board of canvassers and to issue certificates showing that the relator received 2441 votes and the defendant, Fox, received 2417 votes at such general election, as disclosed by the returns made by the precinct election officers holding such election in the first ward. It is pertinent here to say that this proceeding only affects the election returns from precinct number 1, first ward, of the City of Huntington.

This proceeding was submitted for decision upon the petition of the relator, the joint and separate answers of the County Court of Cabell County, sitting as a board of canvassers, James Brady, James M. Donohoe and Frank Heiner, Commissioners of such Court and constituting ex officio the board of canvassers of Cabell County, the written motion of the defendant, David Fox, Jr. to dismiss the petition and the separate answer of said David Fox, Jr. Several documents were filed with the pleadings of the parties to this proceeding. No proof was filed as a part of the record.

By the pleadings, the following facts were shown: That the relator and the defendant Fox were the nominees of the Republican and Democratic parties respectively for the office of member of the city council for the first ward of the City of Huntington at the election held November 4, 1952, they having been nominated by their respective parties at the primary election, held in the month of May, 1952. A canvass of the election returns showed that the relator received 2441 votes in the 14 precincts constituting such first ward and that the defendant Fox received 2417 votes in those precincts.

The defendant Fox demanded a recount, filed a peti-

tion in which he alleged that the count of votes as disclosed by voting machine number 8400, used at precinct number 1, did not reflect the actual vote cast in such precinct. Fox attached to his petition for recount the joint affidavits of forty persons allegedly voting in such precinct. The affidavits stated in substance that the affiants had voted the straight democratic ticket by manipulating the master lever on the voting machine. An affidavit likewise filed by Fox, executed by the election officers who held said election, was to the effect that machine number 8400 was partially inoperative, in that the machine had failed to register any votes for the defendant Fox, out of the first one hundred votes cast; that the one hundred and first voter attempted to vote for Fox and discovered that the machine did not show such vote in that no X appeared before Fox's name on the ballot or panel posted on the machine.

Thereupon, the precinct officers, having their attention drawn to such defect, called upon an assistant voting machine custodian to make an examination of such machine and suspended voting until such examination was made. The assistant voting machine custodian, upon making the examination, found that Fox's name had been inadvertently "blocked out" at the time of the preparation of the machine for voting; that the assistant custodian corrected such defect and thereafter, the voting machine was continued in use until the election polls were closed.

It seems that the board of convassers on the canvass of the election returns, considered the affidavits of the forty voters, the precinct election officers and the assistant custodian of the voting machine on the canvass, but as to the exact details of that procedure, this record is not clear.

The forty affidavits made by the voters, the affidavits of the precinct election officers and the assistant custodian of the voting machine, were attached to Fox's petition for recount.

Upon the recount and in accordance with the showing made by the affidavits, the canvassing board added forty votes for Fox to the ninety votes shown by the counter of the voting machine, thereby giving the defendant Fox a total of 130 votes in precinct number 1 aforesaid. The board of canvassers, on the recount, thereupon ascertained and declared the results in the first ward of the City of Huntington to be as follows: That for the office of councilman of the first ward of the City of Huntington, the relator Duncan had received 2441 votes and the defendant Fox received 2457 votes for the office of councilman of the first ward of such city, and issued certificates accordingly.

This record is needlessly confused. It seems to us that the following questions are presented by the pleadings above mentioned: (1) Is mandamus a proper remedy to be invoked? (2) Was the action of the board of canvassers upon the recount, in issuing the certificates above mentioned, supported by the facts and authorized by law? (3) May a canvass, a recount and a contest be heard together? (4) May a defect in a voting machine be shown in a proper proceeding to correct returns?

Before discussing the controlling questions, we advert to the statutory provisions contained in Sections 16 and 20 of Chapter 161, Acts of the Legislature, Extraordinary Session, 1933.

Under the provisions above mentioned, the County Court of Cabell County, sitting as a board of canvassers, is the proper tribunal in this instance to canvass the municipal election and on proper demand, conduct a recount of the votes cast in such election.

The defendant Fox's motion to dismiss the petition is based upon two propositions, (1) that the relator has a plain, adequate and complete remedy at law by contest, and (2) that the final finding of fact, made by the board of canvassers, should not be disturbed in this proceeding. A partial answer to the contention of the defendant

Fox will be found in the provisions of Code, 3-5-41, reading in part as follows: "A mandamus shall lie from the supreme court of appeals, or any one of the judges thereof in vacation, returnable before said court, to compel any officer herein to do and perform legally any duty herein required of him." · Under the provisions of Code, 3-5-41, the scope of the writ is enlarged, and it is made applicable to all ministerial or judicial duties of election officers. *Marquis* v. *Thompson*, 109 W. Va. 504, 508, 155 S. E. 462. See *Sanders* v. *Board*, 79 W. Va. 303, 308, 90 S. E. 865; *State* v. *Mercer County Court*, 129 W. Va. 584, 41 S. E. 2d 855.

It was held in *State* v. *Mills*, 132 W. Va. 580, 53 S. E. 2d 416, "a finding of fact by a board of canvassers upon a recount of election ballots, based upon its inspection of the election returns and evidence relating to such returns introduced before the board, will not be disturbed in a proceeding in mandamus unless such finding is against the weight of the evidence or is in contradiction of the election returns." The correction of returns of an election, when proper, should be based on evidence. *Hatfield* v. *Board of Canvassers*, 98 W. Va. 41, 126 S. E. 708.

The finding of the board of canvassers in the instant proceeding contradicts election returns as shown on the counter of voting machine number 8400, and, as will be hereinafter shown, the affidavits made by the voters in precinct number 1 do not rise to the dignity of evidence. We therefore hold that mandamus is the proper remedy to be invoked in the situation here shown, and the motion to dismiss this proceeding is accordingly overruled.

So far as we are able to ascertain, the canvassing board had nothing before it to support its factual conclusion, except the affidavits mentioned above.

In discussing the question of affidavits considered by the canvassing board in ascertaining the results of the election, we deem it proper to note that this court held in *State* v. *Mills, supra,* that two certain affidavits rela-

tive to the signature of the poll clerk should have been presented to, and considered by the board. Citing in support of that, *Johnson* v. *Board of Canvassers,* 102 W. Va. 703, 708, 136 S. E. 772, where it was said that "numerous ex parte affidavits presented here on the question cannot be considered by us." In the instant proceeding, the affidavits were presented to the board as hereinabove stated, which calls for further inquiry into the status of an affidavit as evidence.

The question of whether voters are permitted to contradict the returns of an election where the voting is by paper ballots, has been considered in other jurisdictions. If the integrity of ballots has been preserved, in accordance with law, and no fraud or other illegality is shown in the election, witnesses are not permitted to testify as to the candidate for whom they voted at an election. *Carabajal* v. *Lucero,* (N. M.) 158, P. 1088. See *Siler* v. *Brown,* (Ky.) 284 S. E. 997, 1004; *Condren* v. *Gibbs,* (Ark.) 127 S. W. 731; *Cremer* v. *Steinborn,* (Wisc.) 66 N. W. 798; *Easterbrooks* v. *Atwood,* (Vt.) 76 Atlantic 109; The Law of Elections, Paine, Sections 767, 769, 772. See 22 Annotated Cases, 1912 A, page 296 for an informative note on this subject.

In an inter partes proceeding where votes are cast on a defective voting machine, as indicated in the instant proceeding, admission of proper evidence contradicting the machine was permitted. *People* v. *Wintermute,* (N.Y.) 86 N. E. 818. See *Hogan* v. *Supreme Court,* 16 N. Y. S. 2d 351; Vol. 17, Consolidated Laws of New York, Annotated, Article 14, Section 330, subdivision 4. The statute just mentioned deals with judicial proceedings to correct election returns.

But in this proceeding, the contradiction of voting machine number 8400 rests on affidavits rather than competent testimony or evidence. The proceeding in which such affidavits were filed is pending before a board of canvassers, a tribunal of limited powers.

Relative to introduction of affidavits in a suit or action, it was held in *Herold* v. *Craig,* 59 W. Va. 353, 356, 53 S. E. 466, that ex parte affidavits could not be considered in determining the issues on the merits of the cause raised by the pleadings. In *Dale* v. *Atwell,* 103 W. Va. 590, 593, 138 S. E. 201, it was stated that ex parte affidavits "are generally not admissible as evidence on a material question at issue." The affidavit of the assistant custodian of the voting machine relative to its defective condition and the affidavits of precinct election officers on the same subject may have been proper to be considered as evidence relating to the returns of the election in precinct number 1, but the affidavits of the 40 voters, which is the crucial fact here considered, were extrinsic to the election returns and should not have been considered to contradict the election returns from precinct number 1. *State* v. *Mills, supra.* In *Brazie* v. *Commissioners,* 25 W. Va. 213, it was held "Aside from the *quasi* judicial functions necessarily incident to their duties in determining that the ballots, poll-books and certificates of the *elecion* returns laid before them are genuine, that they are in fact the returns and substantially in the form prescribed by the statute, and to correct or have them put in form if they are not so, the duties of said commissioners are purely ministerial, and their judicial functions are limited to the acts prescribed in the twenty-first section of said statute." The commissioners referred to in the quotation immediately preceding, were the county commissioners and the statute referred to therein was Chapter 155, Acts of the Legislature, Adjourned Session, 1882, which relates to the power and duty of commissioners of a county court, instead of a board of canvassers, in ascertaining the result of an election by canvass and recount. See Section 21, Chapter 155, Acts of the Legislature, Adjourned Session, 1882.

A recount and a contest are separate proceedings. The recount must terminate and the results must be declared before the contest may commence. *Reynolds* v. *Board,* 117 W. Va. 770, 188 S. E. 229. It is true that in the case

of *Sanders* v. *Board, supra,* it was held by this court that a canvassing board may examine and consider reliable available evidence which would enable the board of canvassers to ascertain the contents of certificates of election results where the ballots, poll-books and certificates had been stolen before the examination by the board. We do not have such situation in this proceeding.

We fail to see the pertinency of the cases of *Rollyson* v. *Court,* 113 W. Va. 167, 167 S. E. 83 and *Brannon* v. *Perky,* 127 W. Va. 103, 31 S. E. 2d 898, cited in the briefs of counsel.

Upon consideration of the fact that there has been no contest of the election and that we here consider the validity of a recount, we are of the opinion that the action of the board of canvassers of Cabell County, in adding 40 votes to the total votes received by defendant Fox, in the first ward in the City of Huntington, was not authorized by law, nor supported by proper proof.

It is not amiss to observe that under Sections 16 and 20, Chapter 161, Acts of the Legislature, 1933, Second Extraordinary Session, that the general election laws of the State of West Virginia apply to municipal elections held in the City of Huntington, and that the general election laws of the State of West Virginia control as to primary and general elections held in said city for municipal officers.

We are not unmindful of the holding of this court in *Evans* v. *Charles,* 133 W. Va. 463, 56 S. E. 2d 880, to the effect that the common council of a municipality incorporated under Article 2, Chapter 8 of the Code, is vested with original and exclusive jurisdiction to hear and decide a contested election involving the selection of municipal officers; but in the instant proceeding, the jurisdiction to hear and determine a contested election is placed in the county court by statute, the Special Charter of the City of Huntington.

The case here considered, insofar as it relates to vot-

ing machines, is one of first impression in this juris-diction, but we do not think that the fact that a voting machine was used to receive and record the votes in precinct number 1 of the first ward of the City of Huntington entirely eliminates or alters the method of ascertaining the results of an election as determined by statutes now in force and judicial decisions heretofore made. We are fortified in this by the following statutory provisions: "Except as modified by this article, [referring to article 5-a, Chapter 58, Acts of the Legislature, 1949, Regular Session] the general laws applying to regular, special and primary elections shall apply to elections conducted with the use of voting machines." Section 32, Chapter 58 *id*.

Many provisions appear in Chapter 58 *id*, as amended by Chapter 89, Acts of the Legislature, 1951, Regular Session, relating to the printing of ballots, the custody of the voting machines and their repair and testing. Without going into the questions raised by the relator with reference to the various acts prescribed by Chapter 58 *id*, as amended by Chapter 89 *id*, we think that Section 26 of Chapter 89 *id* is the pertinent provision to be here considered:

"When during a canvass or a recount of votes cast in an election it appears to the board of canvassers or if it is so alleged in a petition for a recount, that a voting machine used in any precinct has by reason of mechanical failure or improper or fraudulent preparation or tampering incorrectly recorded and tabulated the actual votes cast on such machine, the board of canvassers shall proceed to determine the error, if any, in the vote registered on such voting machine. If an error is found, the board of canvassers shall correct the election returns from such precinct so as to accurately reflect the votes cast in such precinct at such election if it is possible to accurately correct such error. If the board of canvassers are unable to accurately correct such errors made by said voting machine and therefore cannot correct the re-

turns from such precinct to accurately reflect the actual votes cast at such election, the total votes registered on such voting machine, despite the fact that such vote may be erroneous, shall be accepted in the canvass and in the recount as the votes cast in such precinct." * * *

Prior to discussing the questions relative to voting machines, we resort to decisions in other jurisdictions where voting machines have been in use for some time. If the 40 votes were lawfully cast, though not shown because of a defective voting machine, the voters should not be disfranchised by judicial decision. *In Re Creedon*, (N. Y.) 189 N. E. 773. The use of the voting machines does not infringe upon the constitutional right of a voter. *People* v. *Wintermute, supra*. If the voters complied with the regulations for use of the voting machine in precinct 1, first ward of the City of Huntington, though the machine failed to work properly, the casting of the vote was complete. *People* v. *Wintermute, supra*. If a voting machine fails to record votes cast, the number of votes shown on the counter is a point to be initially considered, and it takes competent legal proof that the voter did actually vote for either candidate, which vote was not recorded by the machine. *People* v. *Wintermute, supra*. We do not think that the affidavits of the voters constituted competent legal proof. Ex parte affidavits should be not considered on the merits of an inter partes proceeding.

We are not convinced that the case of *Funkhouser* v. *Landfried*, 124 W. Va. 654, 22 S. E. 2d 353, as urged by defendant Fox, or Section 26 of Chapter 89, Acts of the Legislature of West Virginia, 1951, Regular Session, authorizes the consideration of ex parte affidavits to change or alter the results shown on voting machines.

Accordingly, a writ of mandamus will issue, requiring the board of canvassers of Cabell County to reconvene and declare the true results of the election held in the

first ward in the City of Huntington, November 4, 1952, in accordance with the principles enunciated in this opinion.

By analogy, we think that the office of member of the city council for the first ward in the City of Huntington is similar to that of an office of a "magisterial or other district" and that within 10 days after the results of the election is declared, a contestant must give a written notice to the contestee, as provided in Code, 3-9-2.

Since the true result of the election held November 4, 1952, as to member of the council for the first ward of the City of Huntington, has not heretofore been ascertained, what is said in this opinion shall not be taken to preclude the timely institution and prosecution of a proper contest by the parties to determine the true results of an election in precinct 1, first ward of the City of Huntington, if the parties are so advised.

*Writ awarded.*