278 S.E.2d 886 (1981)
STATE ex rel. Leonard I. UNDERWOOD, Relator,
v.
Robert F. SILVERSTEIN, et al., The County Commission of Kanawha County, et al., Respondents,
John M. Wells, Sr., Party Respondent.
No. 15141.
Supreme Court of Appeals of West Virginia.
June 9, 1981.
*887 Andrew J. Goodwin, Charleston, for relator.
Raymond G. Dodson, Charleston, for respondents Silverstein, et al., County Commission of Kanawha County, et al.
John M. Wells, Sr., Jackson, Kelly, Holt & O'Farrell, Thomas E. Potter and James R. Snyder, Charnock & White and John N. Charnock, Charleston, for party respondent.
*888 MILLER, Justice:
On February 17, 1981, the relator, Leonard I. Underwood, filed an original Petition in Mandamus in this Court requesting that the respondents, the County Commissioners of Kanawha County and the West Virginia Secretary of State, be compelled to conduct a recount of the ballots cast in the House of Delegates election held on November 4, 1980. We issued a rule to show cause returnable on May 12, 1981.
Prior to the full hearing, we granted leave for John M. Wells to intervene since he was the candidate who had been certified as having obtained the thirteenth highest vote in the Kanawha County House of Delegates race and was therefore the last member selected. It is his seat that is being challenged by relator.
The intervenor raises as a primary defense to this proceeding that in light of the time constraints of W.Va.Code, 3-1-45, we did not originally have jurisdiction to entertain a petition for a writ of mandamus. We agree and dismiss the mandamus as improvidently awarded.
The first sentence of W.Va.Code, 3-1-45,[1] has been recognized by this Court as providing a statutory basis for what has been termed our "election mandamus" powers. E. g., State ex rel. Booth v. Board of Ballot Commissioners, 156 W.Va. 657, 196 S.E.2d 299 (1973); Marquis v. Thompson, 109 W.Va. 504, 155 S.E. 462 (1930); Marcum v. Ballot Commissioners, 42 W.Va. 263, 26 S.E. 281 (1896).[2] In Booth, the Court reviewed in some detail our general statutory scheme as to post-election remedies available to candidates, and sought to illustrate how an election mandamus operates in conjunction with our post-election statutes. It did not deal with the time constraints set out in W.Va.Code, 3-1-45, relating to the issuance and hearing of writs of mandamus by this Court.[3]
It is important to note that W.Va.Code, 3-1-45, contains a specific limiting provision "respecting the election of a member of the house of delegates and state senator." Under this provision, if we issue a writ we are required to convene a hearing "not later than ten days from the date of the writ" and to determine the matter "within five days" from the date of the hearing. Furthermore, this statute includes the admonition that the decision should be concluded "in ample time ... in order that such board [of canvassers] may perform its duty and issue the certificate of election before the second Wednesday in January, then next following."
The reference to the second Wednesday in January is to our constitutional date for *889 the convening of the Legislature. West Virginia Constitution, Article VI, Section 18. When this fact is considered along with our constitutional provision in Article VI, Section 24 that states: "Each house shall determine the rules of its proceedings and be the judge of the elections, returns and qualifications of its own members," it is clear that the Legislature intended that as to contested house and senate seats, we are required to conclude any mandamus in advance of the second Wednesday in January.[4]
The conclusion seems inescapable that the Legislature intended in the latter part of W.Va.Code, 3-1-45, to set specific time restraints on the use of election mandamus regarding controversies arising from the general election for house of delegate and senate seats. "Where the language of a statute is clear and without ambiguity the plain meaning is to be accepted without resorting to the rules of interpretation." Syllabus Point 2, State v. Elder, 152 W.Va. 571, 165 S.E.2d 108 (1968). See also Spradling v. Hutchinson, W.Va., 253 S.E.2d 371 (1979); Walls v. Miller, W.Va., 251 S.E.2d 491 (1978); Carper v. Kanawha Banking & Trust Co., 157 W.Va. 477, 207 S.E.2d 897 (1974).
The time limitation in W.Va.Code, 3-1-45, is analogous to other time provisions in our election law which we have held to be obligatory, and if not met, result in lack of jurisdiction. State ex rel. Hager v. Oakley, 154 W.Va. 528, 177 S.E.2d 585 (1970) and Qualls v. Bailey, 152 W.Va. 385, 164 S.E.2d 421 (1968), overruled on other grounds, State ex rel. Smoleski v. County Court, 153 W.Va. 21, 166 S.E.2d 777 (1969), (involving the failure of county courts to conclude election contests within the three-month period under W.Va.Code, 3-7-7). Other courts have reached the same jurisdictional conclusions in regard to mandatory time periods in election contest statutes. E. g., Gay v. Brooks, 251 Ark. 565, 473 S.W.2d 441 (1971); Kinzel v. City of North Miami, 212 So.2d 327 (Fla.App.1968); Lebens v. Harbeck, 308 Minn. 433, 243 N.W.2d 128 (1976); Lohmaier v. Ulster County Board of Elections, 50 A.D.2d 1055, 377 N.Y.S.2d 726 (1975); Rogers v. State Election Board, 533 P.2d 621 (Okl.1974).
The underlying purpose for such time restrictions is to expedite the resolution of election disputes so that the affected candidates may have a prompt resolution of their standing. The orderly conduct of public offices requires that the determination of those who have been lawfully elected should be made as promptly as possible in order that they can assume their official duties unfettered by the prospect of lengthy litigation.
Since we have concluded that the writ of mandamus must be denied because it is barred as untimely under W.Va.Code, 3-1-45, we need not resolve the claim that the case is moot because the ballots have been destroyed pursuant to W.Va.Code, 3-6-9.[5] This statute permits the destruction *890 of ballots sixty days after the canvass has been made or recount completed, if there is a recount. However, it also provides for preservation of the ballots if there is an election contest or court order requiring preservation. In the present case, relator originally filed a mandamus in the Circuit Court of Kanawha County on December 5, 1980. The mandamus was dismissed on February 17, 1981, which was the same date the present case was filed in this Court and our preliminary rule to show cause was issued.[6]
It does not appear that we have had an occasion to discuss the procedural question of the effect of the issuance of a preliminary rule to show cause in a mandamus action. Prior to 1933, this preliminary rule to show cause was sometimes referred to in our cases as an alternative writ or a mandamus nisi. State ex rel. Bowyer v. City of Spencer, 103 W.Va. 695, 138 S.E. 312 (1927); State ex rel. Aultman v. Ice, 75 W.Va. 476, 84 S.E. 181 (1915); State ex rel. Mt. Hope Coal Co. v. White Oak Ry. Co., 65 W.Va. 15, 64 S.E. 630 (1909). Its function was to give to the adverse party notice of the claim and time for hearing. 52 Am.Jur.2d Mandamus § 425 (1970); 55 C.J.S. Mandamus § 312 (1948). In 1933, W.Va.Code, 53-1-5, was amended to provide for the issuance of a rule to show cause.[7] Judge Haymond in State ex rel. Smith v. Bosworth, 145 W.Va. 753, 117 S.E.2d 610, 618 (1960), concluded that the statutory rule to show cause supplanted the alternative writ of mandamus but performs the same functions formerly performed by the alternative writ of mandamus.
An additional function of the alternative writ where it was directed against some subordinate tribunal was to stay proceedings until the parties could be heard and the issues resolved. 52 Am.Jur.2d Mandamus § 425 (1980); 55 C.J.S. Mandamus § 312 (1948); Ex Parte Register, 257 Ala. 408, 60 So.2d 41 (1952); State ex rel. Hughes v. Brown, 31 Ohio St.2d 41, 285 N.E.2d 376 (1972).
We, therefore, conclude that where a rule to show cause has been issued in an election mandamus action, this will operate as a stay of proceedings sufficient to preclude the destruction of ballots under W.Va.Code, 3-6-9.
For the reasons herein stated the writ of mandamus is dismissed as improvidently awarded.
Writ Dismissed.
NOTES
[1] "Any officer or person, upon whom any duty is devolved by this chapter [Chapter 3, Elections], may be compelled to perform the same by writ of mandamus."
[2] Marcum also recognized that independent of W.Va.Code, 3-1-45, there was a common law right to mandamus as to ministerial duties. Booth stated this statute had expanded the writ to include review of the performance of judicial duties of election officials.
[3] The material portion of W.Va.Code, 3-1-45, is:

"A mandamus shall lie from the supreme court of appeals, or any one of the judges thereof in vacation, returnable before said court, to compel any officer herein to do and perform legally any duty herein required of him. And respecting the election of a member of the house of delegates and state senator, a writ of certiorari, mandamus or prohibition shall lie from the supreme court of appeals, or a judge thereof in vacation, returnable before said court, to correct any error of law, and review and correct the proceedings of any circuit court, or the judge thereof in vacation, or any board of canvassers. When any such writ of mandamus, prohibition or certiorari shall be issued by said court, or a judge thereof in vacation, it shall be the duty of said court to convene in special session at the state capital, not later than ten days from the date of the writ, to hear and determine all matters arising upon such writ, which matters shall have precedence over all other business pending in said court, and be determined within five days from the assembling thereof, and in any case, in ample time for the case to be remanded and final action taken by the circuit court and the board of canvassers, in order that such board may perform its duty and issue the certificate of election before the second Wednesday in January, then next following. In mandamus and prohibition proceedings under this section the same may be upon affidavit alone."
[4] It is also clear that the time constraints in W.Va.Code, 3-1-45, are applicable to contested house and senate seats occurring at the general election and not to primary elections since the primary election settles only the nominees for those seats. This point is supported by the provision in W.Va.Code, 3-5-20, dealing with contested primary elections for all offices, which states: "The procedure in such case shall be the same as that governing the contest of a general election by candidates for county offices or offices in magisterial districts." The provisions for contest of a general election are found in W.Va.Code, 3-7-1 et seq., and vary depending on the nature of the office, but as noted the primary election contest statute ties primary contests to the general election statutes relating to contests of county and magisterial district candidates, which are found in W.Va.Code, 3-7-6, and W.Va.Code, 3-7-7. See State ex rel. Palumbo v. County Court, 151 W.Va. 61, 150 S.E.2d 887 (1966).
[5] The pertinent portion of W.Va.Code, 3-6-9, states:

"When they have made their certificates and declared the results as hereinafter provided, they shall deposit the sealed packages of ballots, absent voter ballots, registration records, pollbooks, tally sheets and precinct certificates with the clerks of the county commissions and circuit courts from whom they were received, who shall carefully preserve the same for sixty days, and if there be no contest pending as to any such election, and their further preservation be not required by any order of a court, such ballots, pollbooks, tally sheets and certificates shall be destroyed by fire or otherwise, without opening the sealed packages of ballots; and if there be such contest pending, then they shall be so destroyed as soon as the contest is ended ..."
[6] In his original petition in this Court the relator did not advise that a mandamus had been filed in the circuit court. It appears that a rule to show cause was also issued initially by the circuit court against the Kanawha County Commissioners.
[7] W.Va.Code, 53-1-5 (1933), in its present form states:

"The court or judge to whom the petition in mandamus or prohibition is presented shall, if the petition makes a prima facie case, issue a rule against the defendant to show cause why the writ prayed for should not be awarded. A copy of the petition shall accompany service of the rule. Such rule shall be returnable at a time to be fixed by the court or judge."
Prior to its revision, W.Va.Code, 53-1-5 (1931), read:
"When the application is made, on proof of notice and service of the copy of the petition as aforesaid, if the defendant fail to appear, or appearing fail to make defense, and the petition states a case proper for the writ, a peremptory writ shall be awarded with costs."